**No. 24-2292**

IN THE

# United States Court of Appeals

**FOR THE FEDERAL CIRCUIT**

NIMBELINK CORP.,

*Plaintiff-Appellant*

v.

DIGI INTERNATIONAL, INC.,

*Defendant-Appellee*

On Appeal from the United States District Court
for the District of Minnesota
No. 0:22-cv-02345-NEB-DJF, Hon. Nancy E. Brasel

**BRIEF OF APPELLEE DIGI INTERNATIONAL, INC.**

Timothy E. Grimsrud
Katherine S. Razavi
Kelly J. Fermoyle
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Telephone: +1 612 766 7000
Facsimile: +1 612 766 1600
*tim.grimsrud@faegredrinker.com*
*kate.razavi@faegredrinker.com*
*kelly.fermoyle@faegredrinker.com*

*Attorneys for Defendant-Appellee*
*Digi International, Inc.*

## REPRESENTATIVE PATENT CLAIMS

### U.S. Patent No. 9,497,570 B2 — Claim 1

1. A space-efficient cellular modem device for machine-to-machine communications, the modem device comprising:

a multi-layer printed circuit board defining a top side and a bottom side and including a first circuit layer adjacent the top side, a second circuit layer adjacent the bottom side, a ground plane layer, and a power plane layer, the ground and power plane layers located between the first and second circuit layers;

a cellular transceiver module configured to communicate over a cellular wireless cellular network, the cellular transceiver module comprising a processor and attached to a top side of the multi-layer printed circuit board; electrical power management components attached to the multi-layer printed circuit board, the power-management components in electrical communication with the cellular transceiver module;

a first plurality of electrically-conductive pins in electrical connection with the cellular transceiver module and aligned along a first pin axis to form a first row of pins, each of the first plurality of pins extending outwardly and away from the bottom side of the multi-layer printed circuit board;

a second plurality of electrically-conductive pins in electrical connection with the cellular transceiver module and aligned along a second pin axis to form a second row of pins, each of the second plurality of pins extending outwardly and away from the bottom side of the multi-layer printed circuit board, the second row of pins located opposite the first row of pins; and

a communications port in electrical communication with the cellular transceiver module, the communications port configured to receive and transmit communication signals over the cellular wireless network.

**U.S. Patent No. 9,838,066 — Claim 1**

1. A space-efficient cellular modem device for machine-to-machine communications, the modem device comprising:

a multi-layer printed circuit board defining a first side and a second side and including at least four layers, the four layers including a first layer including one or more circuits, a second layer including a ground plane, a third layer including a power plane, and a fourth layer including one or more circuits, wherein the first layer is soldermasked to form the first side of the multilayer printed circuit board, the second layer is between the first layer and the fourth layer, the third layer is between the first layer and the fourth layer, and the fourth layer is soldermasked to form the second side of the multilayer printed circuit board;

a cellular transceiver module configured to communicate over a cellular wireless network, the cellular transceiver module comprising a processor and attached to the first side of the multi-layer printed circuit board;

electrical power-management components attached to the multi-layer printed circuit board, the power-management components in electrical communication with the cellular transceiver module;

a first plurality of electrically-conductive pins aligned along a first pin axis to form a first row of pins, each of the first plurality of pins extending outwardly and away from the multi-layer printed circuit board, one or more of the first plurality of electrically-conductive pins in electrical connection with the cellular transceiver module and one or more of the first plurality of electrically-conductive pins in electrical connection with the electrical power-management components;

a second plurality of electrically-conductive pins aligned along a second pin axis to form a second row of pins, each of the second plurality of pins extending outwardly and away from the multi-layer printed circuit board, the second row of pins located opposite the first row of pins; and

a communications port in electrical communication with the cellular transceiver module, the communications port configured to receive and transmit communication signals over the cellular wireless network.

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 24-2292

**Short Case Caption** NimbeLink Corp. v. Digi Int'l, Inc,

**Filing Party/Entity** Digi International Inc.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 12/16/2024

Signature: /s/ Katherine S. Razavi

Name: Katherine S. Razavi

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Digi International, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Faegre Drinker Biddle & Reath LLP | Katherine S. Razavi, Esq. | Timothy E. Grimsrud, Esq. |
| Kelly J. Fermoyle, Esq. | Andrew M. McCoy, Esq. | Evan J. Kline-Wedeen, Esq. |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

**TABLE OF CONTENTS**

STATEMENT OF THE ISSUES....................1

STATEMENT OF THE CASE....................2

I. THE PARTIES....................3

II. THE TECHNOLOGY OF THE PATENTS-IN-SUIT....................3

III. THE ASSERTED PATENTS....................7

IV. THE NON-DISCLOSURE AGREEMENTS....................8

V. THE DISTRICT COURT LITIGATION....................10

A. Dismissal of NimbeLink's Contract Claims....................10

B. Dismissal of NimbeLink's Patent Infringement Claims....................12

SUMMARY OF ARGUMENT....................14

ARGUMENT....................17

I. The District Court Correctly Found that the Asserted Patents are Invalid Because "Space-Efficient Cellular Modem Device" is Indefinite Under 35 U.S.C. § 112....................17

A. "Space-Efficient Cellular Modem Device" is Limiting....................17

B. "Space-Efficient Cellular Modem Device" Is Indefinite....................23

C. The District Court Correctly Rejected NimbeLink's Proposed Construction....................32

1. The Specification Refutes NimbeLink's Proposed Construction....................33

2. The Prosecution History Refutes NimbeLink's Proposed Construction....................38

3. NimbeLink's Proposed Construction Lacks Objective Boundaries and Adds Confusion ............................................40

II. The District Court Correctly Dismissed NimbeLink's Breach of Contract Claims ..........................................................................45

A. The Complaint Failed to Adequately Plead the Nature of the Confidential Information at Issue.......................................................46

B. The Complaint Failed to Plausibly Allege Unauthorized "Use" of Confidential Information ................................................................51

CONCLUSION ...........................................................................................58

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
299 F.3d 1336 (Fed. Cir. 2002) ....................22

*Am. Dental Ass'n v. Cigna Corp.*,
605 F.3d 1283 (11th Cir. 2010) ....................55

*Amgen Inc. v. Sandoz Inc.*,
923 F.3d 1023 (Fed. Cir. 2019) ....................28

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................... *passim*

*Bell Alt. Corp. v. Twombly*,
550 U.S. 544 (2007)....................16, 45, 55, 56

*Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*,
967 F.3d 1353 (Fed. Cir. 2020) ....................20

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ....................55, 56, 57

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
289 F.3d 801 (Fed. Cir. 2002) ....................14, 18, 19

*Celgene Corp. v. Mylan Pharms. Inc.*,
17 F.4th 1111 (Fed. Cir. 2021) ....................53

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013) ....................56

*Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*,
868 F.2d 1251 (Fed. Cir. 1989) ....................21

*Datamize, LLC v. Plumtree Software, Inc.*,
417 F.3d 1342 (Fed. Cir. 2005) ....................44

*Deere & Co. v. Bush Hog, LLC*,
703 F.3d 1349 (Fed. Cir. 2012) ....................17

*Dorset Indus., Inc. v. Unified Grocers, Inc.*,
893 F. Supp. 2d 395, 410 (E.D.N.Y. 2012) ........................................................47

*Enervations, Inc. v. Minn. Mining & Mfg. Co.*,
380 F.3d 1066 (8th Cir. 2004) ..........................................................................56

*Enzo Biochem*, *Inc. v. Applera Corp.*,
599 F.3d 1325 (Fed. Cir. 2010) ........................................................................31

*In re Fought*,
941 F.3d 1175 (Fed. Cir. 2019) ........................................................................19

*Guangdong Alison Hi-Tech Co. v. Int'l Trade Comm'n*
936 F.3d 1353 (Fed. Cir. 2019) ........................................................................31

*HIP, Inc. v. Hormel Foods Corp.*,
No. 18-615-CFC, 2019 WL 2579266 (D. Del. June 24, 2019) ..........................22

*Intel Corp. v. Qualcomm Inc.*,
21 F.4th 784 (Fed. Cir. 2021) ..........................................................................32

*Interval Licensing LLC v. AOL, Inc.*,
766 F.3d 1364 (Fed. Cir. 2014) ..................................................................*passim*

*JobDiva, Inc. v. Monster Worldwide, Inc.*,
No. 13-cv-8229 (KBF), 2014 WL 5034674 (S.D.N.Y. Oct. 3,
2014) ..................................................................................................................22

*Lemoine v. Mossberg Corp.*,
No. 2020-2140, 2021 WL 4199934 (Fed. Cir. Sept. 15, 2021)..........................18

*Liberty Ammunition, Inc. v. United States*,
835 F.3d 1388 (Fed. Cir. 2016) ..................................................................23, 30

*Luminati Networks Ltd. v. BIScience Inc.*,
No. 2:18-cv-00483-JRG, 2019 WL 6683268 (E.D. Tex. Dec. 6,
2019) ..................................................................................................................22

*Lyon Fin. Servs., Inc. v. Illinois Paper & Copier Co.*,
848 N.W.2d 539 (Minn. 2014) ..........................................................................46

*Media Rts. Techs., Inc. v. Cap. One Fin. Corp.*,
800 F.3d 1366 (Fed. Cir. 2015) ....................................................................29

*Meredith Lodging LLC v. Vacasa LLC*,
2021 WL 5316986 (D. Or. Nov. 15, 2021) ......................................................56

*Miller v. Pilgrim's Pride Corp.*,
366 F.3d 672 (8th Cir. 2004) ..........................................................................53

*MPHJ Tech. Invs., LLC v. Ricoh Americas Corp.*,
847 F.3d 1363 (Fed. Cir. 2017) ......................................................................39

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
572 U.S. 898 (2014)...............................................................................23, 31

*Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*,
30 F.4th 1339 (Fed. Cir. 2022) ...............................................................23, 30

*Pfizer, Inc v. Ranbaxy Lab'ys, Ltd.*,
457 F.3d 1284 (Fed. Cir. 2006) ......................................................................38

*Quinn v. St. Louis Cnty.*,
653 F.3d 745 (8th Cir. 2011) ..........................................................................53

*Reed Const. Data Inc. v. McGraw-Hill Companies, Inc.*,
745 F. Supp. 2d 343 (S.D.N.Y. 2010) .............................................................56

*Robinson v. Bank of Am., N.A.*,
553 F. App'x. 648 (8th Cir. 2014).....................................................................53

*Roundtable Techs. LLC v. Motorola Mobility LLC*,
567 F. App'x 941 (Fed. Cir. 2014) ....................................................................19

*Saso Golf, Inc. v. Nike, Inc.*,
843 F. App'x 291 (Fed. Cir. 2021) ....................................................................29

*Schlief v. Nu-Source*, *Inc.*,
Civil No. 10-4477 .............................................................................................46

*SFA Sys., LLC v. 1-800-Flowers.com., Inc.*,
940 F. Supp. 2d 433 (E.D. Tex. 2013)..............................................................22

*Sleep No. Corp. v. Young et al.*,
507 F. Supp. 3d 1081 (D. Minn. 2020)....................................................46, 47, 48

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*,
844 F.3d 1370 (Fed. Cir. 2017) ..........................................................................31

*Thorner v. Sony Comput. Ent. Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012) ..........................................................................32

*TMT Mgmt. Grp., LLC v. U.S. Bank Nat'l Ass'n*,
2016 WL 730254 (D. Minn. Jan. 4, 2016) ..........................................................55

*Unwired Planet L.L.C. v. Google, Inc.*,
660 F. App'x 974 (Fed. Cir. 2016) .....................................................................22

**Statutes, Rules & Regulations**

35 U.S.C. § 112 ....................................................................................*passim*

Fed. R. Civ. P. § 12(b)(6)........................................................................*passim*

## STATEMENT OF RELATED CASES

No appeal has previously been taken from the proceedings below. There is no case known to be pending in this Court or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal.

## STATEMENT OF THE ISSUES

1. Whether the district court correctly held that the preamble phrase "space-efficient cellular modem device" in U.S. Patent No. 9,497,570 B2 ("the '570 Patent") and U.S. Patent No. 9,838,066 ("the '066 Patent") (collectively, "the Asserted Patents") is limiting and indefinite.

2. Whether the district court correctly dismissed NimbeLink's breach of contract claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## STATEMENT OF THE CASE

This is a patent and contract case relating to embedded cellular modems. NimbeLink's Complaint alleged multiple claims for patent infringement and breach of contract related to cellular modem products. After extensive briefing and oral arguments, the District of Minnesota correctly dismissed NimbeLink's claims.

The district court dismissed NimbeLink's patent infringement claims because the Asserted Patents are invalid for indefiniteness under 35 U.S.C. § 112. Appx27. The preamble to every claim of the Asserted Patents recites a "space-efficient cellular modem device." Appx9. As a threshold step, the district court correctly held that the preamble "was intended to give life, meaning, and vitality to the claims," and is therefore limiting. Appx10-14. Then, in a detailed opinion spanning twenty pages, the district court examined the intrinsic record and held that "space-efficient cellular modem device" is indefinite because the specification and prosecution history fail to provide a reasonably clear and exclusive definition of "space-efficient," leaving the term without an objective boundary. Appx27.

The district court also granted Digi's motion to dismiss NimbeLink's breach of contract claims, finding that NimbeLink failed to allege sufficient *facts* to support a plausible claim. Appx34 ("Even accepting all factual allegations as true and drawing all reasonable inferences in NimbeLink's favor, these bare-bones allegations of breach do not suffice.").

Relevant information regarding the parties, technology, patents, and district court litigation is provided below.

## I. THE PARTIES

Digi is a Minnesota-based company that designs and sells embedded cellular modem products. NimbeLink describes itself as a company that designs and sells cellular modem devices. Br. at 6. That is incorrect. In 2021, before this lawsuit was filed, NimbeLink was acquired by Airgain, Inc. and NimbeLink ceased operations. Appx1546 at n.1; Appx1591-1592 (ceased operations); Dkt. 3 (NimbeLink's Certificate of Interest identifying Airgain, Inc. as its parent company).

## II. THE TECHNOLOGY OF THE PATENTS-IN-SUIT

This case is about modem devices—in particular, embedded cellular modems. Appx859-866. *Modems* are hardware devices that provide a connection to the Internet, cellular networks, or other connected devices. Appx859. *Embedded modems* are modems that are incorporated into larger machines (*e.g.*, vehicles or ATMs), connecting those machines to other machines as part of the "Internet of Things" (IoT). Appx860. Embedded modems have been commercially available since at least the 1990s. *Id.* In 2005, Digi introduced a line of embedded modems called XBee® embedded modems, which operated via radio frequency. *Id*. Digi has also released XBee® embedded modems that operate via different connections, including ZigBee, Wi-Fi, and cellular connections. Appx860-861.

The Asserted Patents specifically relate to *embedded cellular modems,* which are embedded modems that operate via cellular networks. Appx861. NimbeLink did not invent embedded cellular modems. Br. at 7; Appx861. Prior art embedded cellular modem devices were available from various companies—including Multi-Tech Systems, Janus, SparqEE, and GPRSBee—as early as 2003. Appx861. Indeed, the Asserted Patents refer to embedded cellular modems as "generally known." Appx100 at 1:28-29. The basic components of embedded cellular modems include, among other things: a printed circuit board; a cellular transceiver module; and pins. Appx861-866.

In embedded cellular modems, the printed circuit board is also referred to as the "PCB." Appx862. The images below show both sides of the PCB in a prior art cellular modem device (specifically, the Multi-Tech prior art device). *Id.*




In embedded cellular modems, a cellular transceiver module is attached to the

PCB, and the cellular transceiver module generates cellular transmission signals and performs other tasks to maintain a connection to a cellular network. Appx863. The image below highlights the cellular transceiver module on the Multi-Tech prior art device. *Id.*




Embedded cellular modems also include pins—in various configurations—for connecting the embedded cellular modem to a larger machine. Appx865-866. For example, the pin structure of the Multi-Tech prior art devices comprised two rows of pins, as shown below:




Similarly, the pin structure of the Digi XBee® prior art modems comprised 20 pins arranged into two rows. Appx865-866. The GPRSBee prior art device used

this same pin arrangement. *Id.*




Digi Xbee RF Modem




GPRSbee

During claim construction, the parties' expert witnesses discussed the term "XBee form factor." Dr. Daniel van der Weide, Digi's expert, explained that the term "XBee form factor" refers to a particular pin arrangement for embedded modems. Appx1948 at 101:10-19, Appx1949-1950 at 108:23-109:8 (explaining that the "XBee form factor" is "characterized by a particular parallel set of pins and the pin-out" and "not dimensions"). Indeed, the specification of the Asserted Patents uses the term "XBee form factor" in reference to pin arrangement. Appx101 at 4:7-9 ("Referring also to FIG. 4, pin connectors 110, as depicted, may comprise two 10-pin connectors, 110*a* and 110*b*, having a 2 mm pitch, so as to comprise an XBee form factor."). It is undisputed that devices that use an "XBee form factor" pin arrangement *do not* share standard dimensions or shapes. Br. at 39 (NimbeLink admitting that "XBee does not have a single 'standard size or shape'"); *see also*

Appx23 (district court noting that "NimbeLink acknowledges that XBee form factors do not have a standard size or shape").

## III. THE ASSERTED PATENTS

The Asserted Patents are related patents entitled "EMBEDDED WIRELESS MODEM," which claim priority to Provisional Application No. 61/936,651 ("the '651 Application"), filed on February 6, 2014. Appx866.[1]

The written description of the Asserted Patents is two and a half pages long. The specification describes the "present invention" as "space-efficient embedded cellular modems for machine-to-machine communications." Appx100 at 1:11-13. The Abstract describes the invention as: "A space-efficient cellular modem device." Appx77. The Summary of the Invention states: "Embodiments of the invention comprise various space-efficient, embedded cellular modems." Appx100 at 1:36-37; *see also* Appx100 at 1:56-57, 2:20-21. The Detailed Description includes repeated references to embodiments of a "space-efficient cellular modem device," and discussions of the "space-efficient" structure. Appx101 at 4:19-21 ("compact, space-efficient embedded cellular modem"), Appx101 at 4:30-33 ("efficient spacing of surface-mounted components"); Appx102 at 5:36 ("The space-efficient size of embedded cellular modem 100 is enabled by the use of surface mount connectors to

[1] The parties agree that the specifications of the Asserted Patents are nearly identical. Therefore, Digi cites only to the specification of the '570 patent.

meet XBee pinout requirements while freeing up surface area on the topside of the modem and its PC Board.”).

The preamble of all claims of the Asserted Patents is the same: “A space-efficient cellular modem device for machine-to-machine communications, the modem device comprising . . . .” *See* Appx102-103; Appx128-130. As discussed below, the Asserted Patents provide no definition of the term “space-efficient,” nor objective boundaries that would allow a person skilled in the art to understand what is “space-efficient” and what is not “space-efficient.”

The specification states multiple times that the patentee intended “not to limit the invention to the particular embodiments described.” Appx101 at 3:22-30; *see also* Appx102 at 5:39-56 (descriptions of embodiments are “intended to be illustrative and not limiting”).

## IV. THE NON-DISCLOSURE AGREEMENTS

NimbeLink’s Complaint alleges breach of “the 2015 NDA” (Count III) and “the 2016 NDA” (Count IV). The parties agree that the 2015 NDA and 2016 NDA are governed by Minnesota law. Br. at 45; Appx33.

Notably, NimbeLink’s brief omits key terms of the NDAs. Specifically, NimbeLink fails to mention that the NDAs expressly granted Digi the right to develop and introduce a competing cellular modem product—and prohibited any “inference” of breach from Digi’s development or introduction of a competing

product. For example, the 2015 NDA recites:

> 8. . . . Subject to the obligations of this Agreement, *neither Party will be precluded from independently developing technology* or pursuing business opportunities similar to those covered by this Agreement.

Appx217 (emphasis added).

The 2016 NDA recites:

> The Receiving Party recognizes that the disclosing Party is now engaged in a business which competes with the Receiving Party's business. As such, the Disclosing Party acknowledge [sic] that the Receiving Party and its affiliates are knowledgeable with respect to the industry to which the Information relates, *and the Disclosing Party agrees that the Receiving Party or its affiliates' employment of the same or similar practices, techniques, concepts or information as those by the Disclosing Party or disclosed as party of the Information shall not, in and of itself, give rise to any inference that any Information was used or disclosed in violation of this agreement.* Accordingly, the Disclosing Party understands and agrees that nothing in this agreement will restrict the Receiving Party engaging in any business (directly or indirectly) which competes or may compete, directly or indirectly, with the Disclosing Party's business, including, without limitation, by making bids or quotes in direct competition with the Disclosing Party, provided, however, that the foregoing shall in no way limit any of the Receiving Party's agreements and obligations hereunder.

Appx260 (emphasis added). That is, the NDAs clearly state that, prior to any alleged transfer of "information" under the NDAs, Digi was already "engaged in a business which competes with [NimbeLink's] business" and was already "knowledgeable with respect to the industry to which the Information relates" (*i.e.* the cellular modem industry, according to NimbeLink). *Id.* Accordingly—because Digi already possessed knowledge about the cellular modem industry—NimbeLink explicitly

agreed that, if Digi launched a competing cellular modem product in the future, *there could be no inference that Digi had used NimbeLink's confidential information to do so*. *Id.*

The district court cited, quoted, and specifically relied on the above contractual provisions in dismissing NimbeLink's contract claims. Appx30 (quoting 2015 NDA); Appx35 (quoting and discussing 2015 NDA and 2016 NDA). Despite the centrality of these provisions to the district court's dismissal of the contract claims, NimbeLink does not mention these provisions in NimbeLink's Statement of the Case or anywhere in NimbeLink's brief.

## V. THE DISTRICT COURT LITIGATION

NimbeLink filed the present case in the District of Minnesota on September 23, 2022. Appx131. NimbeLink's Complaint alleged five claims:

| | |
|---|---|
| Count I | Patent Infringement of the '570 Patent |
| Count II | Patent Infringement of the '066 Patent |
| Count III | Breach of Contract (2015 NDA) |
| Count IV | Breach of Contract (2016 NDA) |
| Count V | Unjust Enrichment |

### A. Dismissal of NimbeLink's Contract Claims

On May 22, 2023, the district court granted Digi's motion to dismiss NimbeLink's breach of contract claims (Counts III and IV) for failure to state a claim under Rule 12(b)(6). Appx36-37. The district court emphasized that NimbeLink's

Complaint failed to plead sufficient *facts* to support a plausible claim for breach of contract. Appx34-37.

The district court held that NimbeLink's "bare-bones allegations" regarding "non-permitted uses" of NimbeLink's information were insufficient to plead a plausible breach of the NDAs. Appx34 ("Even accepting all factual allegations as true and drawing all reasonable inferences in NimbeLink's favor, these bare-bones allegations of breach do not suffice."). The district court also held that NimbeLink's Complaint "does not offer any factual allegations suggesting the nature of the confidential information that Digi alleged used." Appx34 (citations omitted).

The district court specifically held that it could not "infer" that Digi used confidential information from the alleged "sequence of events," *i.e.*, that Digi allegedly received information about NimbeLink's cellular modem and that Digi later developed and introduced a competing cellular modem. Appx35; Appx279 (NimbeLink arguing that the court should "infer" breach from the "sequence of events"). The district court emphasized that the 2015 NDA and 2016 NDA "specifically contemplate Digi developing its own competing products" and "[a]s such, the Court cannot reasonably infer that Digi breached the NDAs based solely on its development of XBee Cellular modem products." Appx35.

Following dismissal of the contract claims, NimbeLink stipulated to dismissal of its unjust enrichment claim (Count V). Appx1537-1538.

Later, after the deadline for amending the pleadings had passed, NimbeLink filed a motion to amend the complaint to re-plead breach of contract claims, but NimbeLink's motion was denied. Appx53 at Dkt. 108. On appeal, NimbeLink does not challenge the district court's denial of NimbeLink's motion to amend.

### B. Dismissal of NimbeLink's Patent Infringement Claims

On March 14, 2024, the district court dismissed NimbeLink's patent infringement claims (Counts I and II) because the term "space-efficient cellular modem device" is indefinite under 35 U.S.C. § 112. Appx27. The district court explained that "the Asserted Patents' specification and prosecution history fail to provide a reasonably clear and exclusive definition of 'space-efficient,' leaving the term 'without an objective boundary'" and, "as a result, the claims fail to inform, with reasonable certainty, persons skilled in the art about the scope of the invention." Appx27.

In reaching this conclusion, the district court first held that the preamble is a claim limitation. Appx10-14. The district court noted, among other things, that the specification described "the present invention" as "space-efficient," and included repeated references to the term "space-efficient," which "indicate that the preamble was intended to give life, meaning, and vitality to the claims." Appx11-12. The district court specifically rejected NimbeLink's argument that a term cannot be both limiting and indefinite, noting the complete lack of legal support for NimbeLink's

argument and emphasizing that "courts have found a preamble to be both limiting and indefinite." Appx13 (collecting citations).

After finding the preamble to be limiting, the district court turned to a lengthy examination of the intrinsic evidence to determine whether it provided sufficient "objective boundaries" for the term "space-efficient cellular modem device." Appx14-22. The district court concluded that—at best—"the meaning of the term 'space-efficient' is muddled." Appx21. For example, as the district court noted, some sections of the specification suggested connections between "space-efficient" and *the size of the modem*, while other sections of the specification suggested connections between "space-efficient" and *the efficient spacing of surface-mounted component*. *Id.* The district court emphasized that, even if the Court accepted NimbeLink's argument that "space-efficient" referred exclusively to the *size* of the modem, "this does not get NimbeLink very far" because "the question of *what* size is 'space-efficient' would remain." Appx21-22 (emphasis original).

The district court considered and rejected NimbeLink's proposal that "space-efficient cellular modem device" should be construed as requiring "a cellular modem device incorporating a multi-layer PCB and with a footprint consistent with the footprint of an XBee form factor." Appx22-27. As the district court noted, the "proposed phrase '*footprint* of an XBee form factor' is not mentioned anywhere in the Asserted Patents." Appx23. Indeed, the specification provided no support for

NimbeLink's proposed construction. *Id.* Moreover, the district court emphasized that NimbeLink's proposed construction would only "add confusion" because "NimbeLink acknowledges that XBee form factors do not have a standard size or shape." Appx23.

## SUMMARY OF ARGUMENT

First, the district court correctly held that the preamble term "space-efficient cellular mode modem" is limiting and indefinite. This Court should affirm.

The specification and prosecution histories of the Asserted Patents demonstrate that the preamble was intended to limit the claims. Among other things, the specification refers to the "present invention" as "space-efficient"; the specification includes repeated references to the term "space-efficient"; and the term "space-efficient cellular modem device" provides antecedent basis for multiple dependent claims. All of this demonstrates that the preamble is "necessary to give life, meaning, and vitality" to the claim. *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002). NimbeLink's arguments effectively concede that the preamble is limiting.

The evidence that the term "space-efficient cellular modem device" is indefinite is clear and convincing. A careful, section-by-section evaluation of the two-and-a-half-page specification reveals only vague information about the potential meaning of the term "space-efficient." NimbeLink argues that "space-

efficient" refers exclusively to the "size" of the modem—but the specification does not say that. To the contrary, portions of the specification suggest that "space-efficient" was intended to refer to an efficient configuration of surface-mounted components. Moreover, even if "space-efficient" means some aspect of "size," the specification does not teach which aspect of "size" should be considered, or what the boundaries of an "efficient" size would be.

The district court correctly rejected NimbeLink's proposed claim construction, which would re-write the claims to require "a footprint consistent with the footprint of an XBee form factor." The intrinsic record provides no support for NimbeLink's proposed construction. The patents do not mention "the footprint of an XBee form factor," much less connect that phrase to the meaning of "space-efficient." If anything, NimbeLink's proposed construction adds confusion because the phrase "a footprint consistent with the footprint of an XBee form factor" itself lacks objective boundaries. Moreover, the prosecution history shows that NimbeLink made the intentional choice not to limit independent claims with reference to "an XBee form factor," which strongly supports the district court's refusal to re-introduce that term now.

Second, the district court correctly dismissed NimbeLink's breach of contract claims. This Court should affirm.

It is well-established that, to survive a motion to dismiss under Rule 12(b)(6), claims must be supported with adequate "factual allegations" that are "enough to raise a right to relief above the speculative level[.]" *Bell Alt. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Here, the Complaint does not allege facts sufficient to state plausible breach of contract claims. The district court correctly held that NimbeLink failed to allege the nature of the confidential information at issue and also failed to allege facts demonstrating a non-permitted "use" of such confidential information. Notably, the district court emphasized that the NDAs permitted Digi to develop and sell a competing cellular modem product, and further provided that no inference of unlawful conduct should be drawn merely from Digi's development and introduction of a competing product. Given this agreement and lack of factual allegations, the district court correctly refused to infer a non-permitted "use" of unidentified information merely from Digi's development and introduction of a competing cellular modem product.

This Court should affirm the district court's dismissal of NimbeLink's patent and contract claims for these reasons and others discussed below.

## ARGUMENT

### I. THE DISTRICT COURT CORRECTLY FOUND THAT THE ASSERTED PATENTS ARE INVALID BECAUSE "SPACE-EFFICIENT CELLULAR MODEM DEVICE" IS INDEFINITE UNDER 35 U.S.C. § 112

The term "a space-efficient cellular modem device" is present in every claim of the Asserted Patents. The preamble of every claim recites: "A space-efficient cellular modem device for machine-to-machine communications, the modem device comprising . . . ." Appx102-103; Appx129-130.

During claim construction, the parties disputed the meaning of the term "space-efficient cellular modem device." Appx442. When the meaning of a preamble term is disputed, the parties agree that the first step is to determine whether the preamble is limiting. In the district court, NimbeLink represented:

> It is established law that if the meaning of a claim term in a preamble is in dispute, the Court must determine whether that term is limiting. *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1357 (Fed. Cir. 2012). **Therefore, the first question the Court must address is whether the term "space-efficient" is limiting.**

Appx2313 (emphasis in original). Accordingly, although NimbeLink's brief begins with the question of indefiniteness, Digi first addresses the district court's finding that the preamble is limiting.

#### A. "Space-Efficient Cellular Modem Device" is Limiting

"Whether to treat a preamble as a limitation is a determination resolved only on review of the entire patent to gain an understanding of what the inventors actually

invented and intended to be encompassed by the claim." *Catalina*, 289 F.3d at 808 (internal quotation and citation omitted). "In general, a preamble limits the invention if it recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim." *Id.* A preamble may operate as a claim limitation if, for example, it recites "additional structure or steps underscored as important by the specification," it provides antecedent basis for a claim limitation, or there was clear reliance on the preamble to distinguish prior art during prosecution. *Id*. Here, the district court correctly held that the preamble is limiting because "it recites additional structure that is underscored as important by the specification" and because the "repeated references to 'space-efficient' in the specification indicate that the preamble was intended to give life, meaning, and vitality to the claims." Appx11-12.

Notably, the specification refers to the "*present invention*" as a "space-efficient embedded cellular modems." Appx100 at 1:12-14 (emphasis added). "When the specification describes the features of the 'present invention' as a whole, this description limits the scope of the invention." *Lemoine v. Mossberg Corp.*, No. 2020-2140, 2021 WL 4199934, at *3 (Fed. Cir. Sept. 15, 2021).

The specification also repeatedly refers to the invention and embodiments as "space-efficient" cellular modem devices. The Abstract describes the invention as: "A space-efficient cellular modem device." Appx77. The Summary of the Invention

states: "Embodiments of the invention comprise various space-efficient, embedded cellular modems." Appx100 at 1:36-37. The specification continues to refer, in various places, to the structure, arrangement, and/or size of the cellular modem device as "space-efficient." *Id*. at 1:56-57 ("space-efficient cellular modem device"), 2:20-21 ("space-efficient cellular modem device"); Appx101 at 4:19-21 ("compact, space-efficient embedded cellular modem"), 4:30-33 ("efficient spacing of surface-mounted components"); Appx102 at 5:2-4 (identifying "unique features and benefits" including "[t]he space-efficient size of embedded cellular modem"). Such repeated references to a feature in the specification "underscore the importance of the feature to the claimed invention," and demonstrate that the preamble term is limiting. *Roundtable Techs. LLC v. Motorola Mobility LLC*, 567 F. App'x 941, 943 (Fed. Cir. 2014) (affirming district court finding that the preamble term "selectively rotating" was limiting).

The preamble term "space-efficient cellular modem device" also provides antecedent basis for multiple dependent claims in the Asserted Patents that refer back to "the cellular modem device" of the independent claim. This Court has "repeatedly held a preamble limiting when it serves as antecedent basis for a term appearing in the body of a claim," *In re Fought*, 941 F.3d 1175, 1178 (Fed. Cir. 2019), because it "indicates a reliance on both the preamble and claim body to define the claimed invention," *Catalina*, 289 F.3d at 808. Indeed, this is a "strong indication" that the

preamble is limiting. *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1371 (Fed. Cir. 2020). Here, the term "space-efficient cellular modem device" provides antecedent basis for dependent claims in both Asserted Patents. In the '570 Patent, dependent claims 5, 6, 15, and 16 refer to "the modem device" or "the cellular modem device" of independent claim 1 or 10. Appx102-103. In the '066 Patent, dependent claims 11, 18, and 27 refer to "the cellular modem device" of independent claim 1, 13, or 21. Appx129-130. By necessity, the "space-efficient cellular modem device" recited in the preamble of each independent claim must provide antecedent basis for the dependent claims because there is no other "modem device" or "cellular modem device" recited in the claims. This is a "strong indication" that the preamble is limiting. *Bio-Rad Labs.*, 967 F.3d at 1371.

While the examiner did not use the specific term "space-efficient" to distinguish prior art during prosecution of the Asserted Patents, the examiner distinguished prior art citing "the arrangement, relative size and overall complete structure" of the claimed invention—and the arrangement, relative size, and structure were each described as "space-efficient" in the specification of the Asserted Patents. Appx927 ('570 Notice of Allowance) ("The prior art does not disclose the specific circuit structure including the arrangement, relative size and overall complete structure of the claimed invention."); Appx184-186 at 1:56-57, 2:20-21, 4:19-21, 4:30-33, 5:2-4. NimbeLink relies on this portion of the

prosecution history as relevant to the meaning of "space-efficient." Br. at 24-25.

The district court further noted that the preamble of the Asserted Patents gives life and meaning to the claims because the "specification makes clear that the inventors were working on a particular problem" and "not on general improvements." Appx12 (quoting *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989)). On appeal, NimbeLink argues that is exactly the case here: "The patentees of the Patents-in-Suit do not claim to have invented modems, or even embedded cellular modems . . . *The invention of the Patents-in-Suit* instead rests in the provision of the claimed features in a small-sized modem." Br. at 7 (emphasis added). NimbeLink goes on to argue that the term "space-efficient" was intended to capture the "small" nature of the device. Br. at 25. That is, NimbeLink argues that the preamble is directed to the very "invention" of the Asserted Patents.

In view of the overwhelming evidence, NimbeLink effectively concedes that the preamble is limiting. NimbeLink states that "'space-efficient modem' [sic] is limiting in this case because it gives 'life, meaning, and vitality' to the claim." Br. at 31. NimbeLink incorrectly asserts, however, that the preamble cannot be both limiting and indefinite. Br. at 30-31. That is, NimbeLink agrees that the preamble is limiting if "space-efficient" is definite—but argues that the preamble is not limiting if "space-efficient" is indefinite. This contorted argument has no legal

support. There is no legal principle that a preamble term cannot be both limiting and indefinite. To the contrary, many courts have found a preamble term to be limiting and indefinite. *See, e.g.*, *Unwired Planet L.L.C. v. Google, Inc.*, 660 F. App'x 974, 986 (Fed. Cir. 2016) (affirming the district court's finding that preamble terms were limiting and indefinite); *HIP, Inc. v. Hormel Foods Corp.*, No. 18-615-CFC, 2019 WL 2579266, at *2-*5 (D. Del. June 24, 2019) (finding that a preamble previously found to be limiting was indefinite); *JobDiva, Inc. v. Monster Worldwide, Inc.*, No. 13-cv-8229 (KBF), 2014 WL 5034674, at *13-14 (S.D.N.Y. Oct. 3, 2014) ("[G]iven that this Court has found that the entire preamble is limiting, the Court must address the next question: is it indefinite?"); *Luminati Networks Ltd. v. BIScience Inc.*, No. 2:18-cv-00483-JRG, 2019 WL 6683268, at *10 (E.D. Tex. Dec. 6, 2019) (finding preamble term limiting and indefinite).

NimbeLink cites *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336 (Fed. Cir. 2002) and *SFA Sys., LLC v. 1-800-Flowers.com., Inc.*, 940 F. Supp. 2d 433, 456-457 (E.D. Tex. 2013). Br. at 31. Neither case holds that a preamble cannot be both limiting and indefinite. *See* Appx13 (district court rejecting NimbeLink's reading of *Allen*). Moreover, *Allen* and *SFA* were decided under the abrogated "insolubly ambiguous" standard, which does not apply post-*Nautilus*. *See Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed. Cir. 2014). The district court here did not hold that "space-efficient cellular modem device" is insolubly

ambiguous; it held that the term is indefinite because it is "without an objective boundary." Appx27 (citations omitted). NimbeLink cites no case applying this standard.

The district court therefore correctly held that the preamble is limiting. The next question is whether the term is indefinite.

### B. "Space-Efficient Cellular Modem Device" Is Indefinite

The district court correctly held that the term "space-efficient cellular modem device" is indefinite because it lacks objective boundaries. Appx27. Therefore, the term fails to "inform those skilled in the art about the scope of the invention with reasonable certainty" and is indefinite. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). This Court should affirm.

The parties agree that "space-efficient" is a "term of degree." Appx16. A term of degree "necessarily calls for a comparison against some baseline." *Liberty Ammunition, Inc. v. United States*, 835 F.3d 1388, 1395 (Fed. Cir. 2016). When a patent uses a term of degree, the patent "'must provide objective boundaries for those of skill in the art' in the context of the invention to be definite." *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1349 (Fed. Cir. 2022) (citing *Interval Licensing*, 766 F.3d at 1371).

The district court correctly found that the term "space-efficient" lacks an objective boundary. Appx16 ("The Asserted Patents do not offer a clear method of

measuring or determining space efficiency, nor do they offer any discernable objective boundaries by which a person of ordinary skill in the art would understand the scope of the claims."). The specification does not recite a definition of "space-efficient," or any similar term. The specification also does not recite a method of measuring space-efficiency, a threshold for determining space-efficiency, or a baseline against which space-efficiency should or could be determined. The specification also does not even define the value or metric by which to determine space-efficiency. What aspect(s) of the "cellular modem device" should be considered in evaluating space-efficiency? The specification does not provide a clear answer.

If anything, the specification creates confusion. As the district court recognized, the specification suggests only loose connections between the term "space-efficient" and various different features of the claimed invention. In two passages, for example, the specification suggests a connection between "space-efficient" and the configuration of surface mounted connectors. In Column 5, the specification teaches that "[t]he *space-efficient size* of embedded cellular modem 100 *is enabled by the use of surface mount connectors* to meet XBee pinout requirements while freeing up surface area." Appx102 at 5:3-6 (emphasis added). In Column 4, in reference to Figure 6, the specification also teaches that the "compact, *space-efficient* embedded cellular modem 100 achieves the XBee form

factor by utilizing a multi-layer PCB board," which "allows for *efficient spacing of surface-mounted components, connectors, and interfaces* for the XBee form factor." Appx101 at 4:19-33. Figure 6 shows a multi-layer PC board and indicates the height of the board. Appx101 at 4:29-30 ("PC Board 102 as assembled defines a height of only 0.062 in+/-0.007 in."). The district court correctly concluded: "Thus, the specification and Figure 6 link 'space-efficient,' the 'efficient spacing of surface-mounted' features, and the height of the PC board." Appx17.

NimbeLink argues that the Court should ignore this passage in Column 4 because it "does not use the term 'space-efficient' and does not refer to the nature of the 'cellular modem device' recited in the preamble." Br. at 28. That is incorrect. The discussion of Figure 6 begins with a clear reference to the "space-efficient embedded cellular modem." Appx101 at 4:19-21 ("Referring to FIG. 6, the compact, *space-efficient embedded cellular modem 100* achieves the XBee form factor by utilizing a multi-layer PC board.") (emphasis added). Moreover, the reference to the efficient configuration of surface-mounted components in Column 4 is echoed in Column 5, which again connects the "space-efficient size of the cellular modem device" to the arrangement of "surface mount connectors," thus "freeing up surface area on the topside of the modem and its PC board." Appx102 at 5:3-6.

While urging the Court to disregard most of Column 4, NimbeLink

meanwhile relies on the phrase "compact, space-efficient cellular modem device" in Column 4, arguing that the word "compact" underscores a general reference to "size." Br. at 22. But NimbeLink ignores the rest of the sentence, which goes on to link the "compact, space-efficient cellular modem device" to the use of a "multi-layer PC Board" that enables the "efficient spacing" of surface-mounted components. Appx101 at 4:19-21. Moreover, the word "compact" is a term that underscores *efficiency*. Appx19 (defining "compact" as "occupying a small volume by reason of efficient use of space"). Thus, if anything, the term "compact" underscores that the notion of "efficiency" was important to the patentee. The specification is silent on the meaning of "efficiency," as it relates to the term "space-efficient."

In Column 5, the specification also suggests a connection between "space-efficient" and "XBee pinout requirements," "[t]he use of solder-masked vias," "the use of a micro-SIM card slot," "an XBee-sized board," "freeing up surface area on a topside of the modem," "GPS and GLONASS positioning," and the use of "a multi-layer stackup approach." Appx102 at 5:3-21. There is no indication of which or how many of these factors should be considered, nor objective methods by which to determine whether a device is "space-efficient" by any value.

NimbeLink focuses on references to "size" in the specification. But other than the single reference to "space-efficient size" in Column 5—where it states that the

"space-efficient size of embedded cellular modem 100 *is enabled by the use of surface mount connectors*"—NimbeLink cites no instance where the term "space-efficient" is used in reference to size, much less a particular aspect or measurement of size. Appx102 at 5:3-5. This Court has found a single reference to an embodiment to be insufficient to demonstrate "objective boundaries." *See Interval Licensing*, 766 F.3d at 1373-74 ("[W]e decline to cull out a single 'e.g.' phrase from a lengthy written description to serve as the exclusive definition of a facially subjective claim term.").

NimbeLink argues that the "Background of the Invention" refers to prior art devices that "typically require a large footprint" and that the term "space-efficient" is used "[i]n the very next sentence." Br. at 21-22. NimbeLink fails to mention that "the very next sentence" is in a different paragraph and a different section of the patent (the "Summary of the Invention"). Appx100 at 1:28-38. NimbeLink also fails to mention that "the very next sentence" introduces a discussion of numerous features of the claimed device. Appx100 at 1:36-47. There is no clear connection between the discussion of prior art devices with "a large footprint" and the reference to "space-efficient" in the following paragraph, nor is there any explanation of what "large footprint" means.

NimbeLink also points to specific measurements ("length" and "width") recited in certain dependent claims. Br. at 23-24. NimbeLink calls these "examples"

of a "space-efficient" device. That is unfounded. There is no indication in the patents that "space-efficient" is defined by "length" or "width." If anything, the dependent claims refute NimbeLink's argument because, when the patentee wanted to refer to a size of the claimed device, the patentee simply used dimensions. By not using dimensions in the preamble, and instead using the term "space-efficient," the patentee indicated that "space-efficient" described something *different* than dimensions. *Amgen Inc. v. Sandoz Inc.*, 923 F.3d 1023, 1031 (Fed. Cir. 2019) ("different claim terms are presumed to have different meanings") (cleaned up).

Even if the specification clearly linked "space-efficient" to "size" (which it does not), that does not solve NimbeLink's problem. The specification does not disclose a particular metric or value for evaluating "size." Moreover, the specification does not provide a baseline against which to evaluate whether a particular "size" is efficient. Moreover, the specification does not identify the boundary between what is space-efficient and space-inefficient. There are multiple layers of missing information.

The district court found *Interval Licensing* instructive given "the varied use of the term 'space-efficient'" in the patents. Appx20 (citing 766 F.3d at 1368). In *Interval Licensing*, the Court considered a claim term related to displaying content "in an unobtrusive manner that does not distract a user." 766 F.3d at 1368. The Court concluded that the term "unobtrusive manner" was indefinite when there was

only a "hazy relationship" between the disputed term and the specification language, leaving one "unsure" of whether the term had a particular meaning:

> [T]he specification is at best *muddled*, leaving one *unsure* of whether the "unobtrusive manner" phrase has temporal dimensions as well as spatial dimensions. The *hazy relationship* between the claims and the written description *fails to provide the clarity* that the subjective claim language needs. . . . After reviewing the specification and prosecution history, we find that the "unobtrusive manner" phrase has too *uncertain* a relationship to the patents' embodiments. Contrary to Interval's suggestion, the wallpaper embodiment *does not provide a reasonably clear and exclusive definition*, leaving the facially subjective claim language without an objective boundary.

*Id*. at 1372-73 (emphasis added). *See also Media Rts. Techs., Inc. v. Cap. One Fin. Corp.*, 800 F.3d 1366, 1371 (Fed. Cir. 2015) ("Notably, a claim is indefinite if its language 'might mean several different things and no informed and confident choice is available among the contending decisions.'") (citation omitted); *Saso Golf, Inc. v. Nike, Inc.*, 843 F. App'x 291, 297 (Fed. Cir. 2021) (nonprecedential) (affirming finding of indefiniteness where there were "multiple methods of calculating" the claimed parameter). Likewise, the specification here does not provide a reasonably clear and exclusive definition of "space-efficient." At best, the specification is vague and muddled. Even if certain words or phrases in the specification suggest some loose connection between "space-efficient" and the "size" of the device, that does not help NimbeLink when the term "size" itself is vague and the specification does not teach how "size" would be measured, or what "size" would be considered "space-efficient" or space-inefficient.

This Court's decision in *Liberty Ammunition* is also instructive insofar as it stands in contrast to this case. 835 F.3d at 1396. In *Liberty Ammunition*, the Court found the term "reduced area of contact" was not indefinite because the specification provided "objective boundaries" with the requisite level of certainty. *Id.* For example, the specification identified a point of comparison, stating the invention had "a reduced contact area *as compared to conventional projectiles*" and then identifying *one specific prior art device* ("the M855 round") as the "specific conventional projectile that the invention seeks to improve upon." *Id.* Of course, there is no such disclosure here. Even if the Court accepted NimbeLink's argument that a vague reference to a "large footprint" of unidentified prior art devices was the baseline against which space-efficiency should be determined (which is not what the patents say), the patents here, unlike in *Liberty Ammunition*, do not identify any "specific prior art device . . . that the invention seeks to improve upon." *Id*; Appx2156 at 134:15-21 (NimbeLink's expert admitting that the patents do not identify any prior art device with an alleged "large footprint.").

NimbeLink's reliance on *Niazi* is misplaced. Br. at 25-26. In *Niazi*, the terms at issue ("resilient" and "pliable") were held not indefinite when the patent identified exemplary materials that could be used to make a resilient, pliable catheter. 30 F.4th at 1349. Importantly, the Federal Circuit recognized that these materials were *what made the claimed invention "resilient" and "pliable."* *Id.* at 1349-50. That is, the

"examples" relied on were tied to disputed terms. In contrast, here, there is no indication in the patents that the exemplary dimensions cited by NimbeLink are *what makes the claimed invention "space-efficient."*

NimbeLink's reliance on *Guangdong Alison, Sonix*, and *Enzo* is misplaced for the same reason. Br. at 24-25. In each of those cases, the "examples" relied on were directly tied to the disputed term. *See Guangdong Alison Hi-Tech Co. v. Int'l Trade Comm'n*, 936 F.3d 1353, 1360-62 (Fed. Cir. 2019) (explaining that the specification provided "express definitions for the phrase 'lofty . . . batting' and its components," and then relying on examples of those components to inform the scope of "lofty batting"); *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1379 (Fed. Cir. 2017) (relying on "examples of visually-negligible indicators" to inform the meaning of the term "visually negligible"); *Enzo Biochem*, *Inc. v. Applera Corp.*, 599 F.3d 1325, 1334 (Fed. Cir. 2010) (relying on examples of linkage groups to inform the degree to which linkage groups would interfere with hybridization). The same is not true here. NimbeLink is relying on "examples" of dimensions that are not tied to the term "space-efficient." The patent does not teach that "space-efficient" is measured by length or width.

In sum, because "space-efficient" is a relative term of degree without objective boundaries, the claims fail to provide a skilled artisan reasonable certainty as to the scope of the claims. Thus, the term is indefinite. *Nautilus*, 572 U.S. at 910.

### C. The District Court Correctly Rejected NimbeLink's Proposed Construction

NimbeLink's proposed construction of "space-efficient cellular modem device" underscores that the term is indefinite. NimbeLink's proposed construction would import two additional limitations into the preamble: namely, "a cellular modem device incorporating **[1]** a multi-layer PCB[2] and with **[2]** a footprint consistent with the footprint of an XBee form factor." NimbeLink's proposed construction would improperly re-write the claims. *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1366-67 (Fed. Cir. 2012) ("[W]e do not redefine words. Only the patentee can do that."). Because NimbeLink's proposed construction has no support—and would actually add more confusion—the district court properly rejected it. This Court should affirm.

---

[2] The district court decision focused on the phrase "a footprint consistent with the footprint of an XBee form factor," and did not address the phrase "a multi-layer PCB." Appx22-26. On appeal, NimbeLink does the same. Br. at 34 ("The proper construction of 'space-efficient cellular modem device' is a cellular modem device 'with a footprint consistent with the footprint of an XBee form factor.'"). Thus, Digi likewise focuses on the phrase "a footprint consistent with the footprint of an XBee form factor." That said, the Court can also reject NimbeLink's proposed construction because it introduces redundant terms; the independent claims already recite a "multi-layer printed circuit board" in the body of the claims. *See, e.g.,* Appx102 at 6:8 (claim 1 of the '570 Patent reciting "a multi-layer printed circuit board . . ."); *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 784, 792 (Fed. Cir. 2021) ("Because legal drafters should not include words that have no effect, courts avoid a reading that renders some words altogether redundant.").

### 1. The Specification Refutes NimbeLink's Proposed Construction

The specification refutes NimbeLink's argument. The district court correctly noted: "The proposed phrase '*footprint* of an XBee form factor' is not mentioned anywhere in the Asserted Patents." Appx23. There is certainly no connection between the term "space-efficient" and the "footprint of an XBee form factor."

To demonstrate the lack of intrinsic support for NimbeLink's proposed construction, a highlighted copy of the '570 Patent is provided as Appx2116-2142. As shown, four references to "space-efficient" (highlighted blue) are recitations of the complete preamble ("a space-efficient cellular modem device for machine-to-machine communications"). The other two references to "space-efficient" (highlighted yellow) are in Columns 4 & 5.



Appx2139-2141.

Columns 1 and 2 do not recite any connection between "space-efficient" and "the footprint of an XBee form factor." The term "large footprint" is mentioned in the Background of the Invention with reference to unidentified prior art devices. Appx100 at 1:28-31. The term "XBee form factor" is referenced in a different section among a list of various features of "an embodiment" that are recited in dependent claims. Appx100 at 1:38-41. This reference to "XBee form factor" refers to the pin arrangement of the cellular modem, not to the "footprint" of the device. See Appx101 at 4:7-9.

Column 4 does not recite any connection between "space-efficient" and "the footprint of an XBee form factor." The term "space-efficient" is referenced in discussion of Figure 6, shown below:

> Referring to FIG. **6**, the compact, space-efficient embedded cellular modem **100** achieves the XBee form factor by utilizing a multi-layer PC board. In an embodiment, PC board **102** comprises a multi-layer PC board including a silkscreened and solder-masked top side, a first layer (Layer 1) comprising a circuit top side, a second layer (Layer 2) comprising a ground plane, a third layer (Layer 3) comprising a power plane, a fourth layer (Layer 4) comprising a circuit bottom side, and finally, a silkscreened/solder-masked bottom side.
>
> In an embodiment, and as depicted, PC board **102** as assembled defines a height of only 0.062 in+/−0.007 in.
>
> Such a multi-layer, or 4-layer in this embodiment, allows for efficient spacing of surface-mounted components, connectors, and interfaces for the XBee form factor.




In Column 4 and FIG. 6, there is no reference to "the footprint of an XBee form factor." Appx84, Appx101. As discussed above, the discussion of the "space-efficient" device in Column 4 focuses on the PC board, and especially the multiple layers and "height" of the PC board ("PC Board 102 as assembled defines a height of only 0.062+/-0.007 in."). Appx101 at 4:29-30. Indeed, "FIG. 6" shows the "height" of the PC board, not other dimensions of the modem, and certainly not "the footprint of an XBee form factor." (FIG. 6 is a cross-sectional view and does not show a footprint.) Appx84. Column 4 also states that the PC board "allows for efficient spacing of surface-mounted components, connectors, and interfaces for the XBee form factor." Appx101 at 4:31-33. Thus, Column 4 draws connections between the term "space-efficient" and the height of the PC board and "efficient

spacing of surface-mounted" features—but no connection to "the footprint of an XBee form factor."

Column 5 does not recite any connection between "space-efficient" and "the footprint of an XBee form factor."

> As is evident from the above-described figures, embodiments of the invention provide a number of unique features and benefits. The space-efficient size of embedded cellular modem **100** is enabled by the use of surface mount connectors to meet XBee pinout requirements while freeing up surface area on a topside of the modem and its PC board. The use of solder-masked vias support high-volume manufacturing of small geometry board features under BGA components. Further, the use of a micro-SIM card slot on an XBee-sized board provides unique advantages over known modems.

Appx102 at 5:1-12.

In Column 5, there is no reference to the "footprint of an XBee form factor." Moreover, as discussed above, Column 5 indicates that the "space-efficient size" is enabled by other features: for example, "the space-efficient size of embedded cellular modem 100 *is enabled by the use of surface mount connectors to meet XBee pinout requirements while freeing up surface area* . . ." Appx102 at 5:3-6 (emphasis added). Thus, Column 5 draws connections between the term "space-efficient" and the use of "surface mount connectors," "pinout requirements," and/or some

arrangement of components that "free[s] up surface area" on the topside of the device—but no connection to the footprint of an XBee form factor.

NimbeLink cites various references to the term "XBee" or "XBee form factor" in the specification, disconnected from the term "space-efficient." Br. at 36-37. NimbeLink incorrectly asserts: "The specification . . . repeatedly describes *the invention* as 'XBee sized,'" citing various parts of the specification. *Id.* at 36. But NimbeLink's citations are not descriptions of "the invention," but rather descriptions of embodiments. *Id.* at 36-37; Appx100 at 1:36-41 (discussing embodiment); Appx101 at 4:19-28 (discussing embodiment); Appx102 at 5:3-12 (discussing embodiment); Appx102 at 5:9-11 (discussing embodiment); Appx102 at 5:19-21 (discussing embodiment). It is not surprising that the terms "XBee" or "XBee form factor" are mentioned in descriptions of *embodiments* because dependent claims 5 and 15 of the '570 Patent claim a device "wherein the modem device conforms to an *XBee form factor*." Appx102 at 6:51-52; Appx103 at 8:11-12 (emphasis added). The specification must discuss features recited in dependent claims. As the district court correctly held, however, "NimbeLink cannot rely on embodiments to define the meaning of the term 'a space-efficient cellular modem device' because restricting a claim based on examples 'would improperly import limitations from the specification into the claims, which should be avoided unless the patentee clearly 'intends for the claims and the embodiments in the specification to be strictly

coextensive.'" Appx24 (citing *Pfizer, Inc v. Ranbaxy Lab'ys, Ltd.*, 457 F.3d 1284, 1290 (Fed. Cir. 2006)).

Indeed, the specification clearly states that the "embodiments 'are intended to be illustrative and not limiting.'" Appx101 at 3:22-30 ("It should be understood, however, that the intention is not to limit the invention to the particular embodiments described."); Appx102 at 5:39-51 ("The embodiments above are intended to be illustrative and not limiting. Additional embodiments are within the claims."). Given the patentee's clear statements that the claims should not be limited to embodiments, NimbeLink's reliance on discussions of embodiments to import claim language is especially improper. *See Pfizer*, 457 F.3d at 1290.

In support of its proposed construction, NimbeLink again cites various "dimensions" from the embodiments and dependent claims, asserting that such dimensions are consistent with an "XBee form factor." Br. at 37. These cited dimensions do not support NimbeLink's proposed construction because, as the district court recognized, "neither the embodiments nor the dependent claims tie back to 'the footprint of an XBee form factor.'" Appx25.

#### 2. The Prosecution History Refutes NimbeLink's Proposed Construction

The prosecution history also refutes NimbeLink's proposed construction. Appx26-27 (district court explaining that "the prosecution history supports a finding

that the term 'a space-efficient cellular modem device' is indefinite and cannot be construed as NimbeLink proposes").

The prosecution history demonstrates that the patentee made an intentional choice not to limit the independent claims with reference to an "XBee form factor"—which is exactly what NimbeLink proposes now. The '651 Application, filed on February 6, 2014, claimed "an XBee form factor" in claim 1. Appx920 (claiming an embedded cellular modem "packaged in an XBee form factor"). *See MPHJ Tech. Invs., LLC v. Ricoh Americas Corp.*, 847 F.3d 1363, 1369 (Fed. Cir. 2017) ("[A] provisional application can contribute to understanding the claims."). When NimbeLink filed the application for the '570 Patent on February 6, 2015, NimbeLink omitted the reference to "XBee form factor" from all independent claims and instead moved the reference to "XBee form factor" into two dependent claims. Appx1612-1616 ('570 file history) (omitting "XBee form factor" from proposed independent claims); Appx102-103 (final issued claims). When NimbeLink filed the application for the '066 Patent on November 4, 2016, NimbeLink likewise omitted the reference to "XBee form factor" from all independent claims and all dependent claims. Appx1830 ('066 file history) (omitting "XBee form factor" from proposed independent clam); Appx128-129 (final issued claims).

The district court correctly concluded: "The decision to include 'XBee form factor' in the provisional claim, then omit it from the independent claims of the

Asserted Patents, suggests that the inventors decided not to limit the independent claims of the Asserted Patents with references to an XBee form factor." Appx26. This strongly refutes NimbeLink's proposed construction, which would re-write the independent claims to add terms that were intentionally removed during prosecution.

**3. NimbeLink's Proposed Construction Lacks Objective Boundaries and Adds Confusion**

The district court also correctly rejected NimbeLink's proposed construction because the term "a footprint consistent with the footprint of an XBee form factor" itself lacks objective boundaries and would only add confusion. Appx25 ("Without objective boundaries for 'the footprint of an XBee form factor,' construing the term 'space-efficient' to include a footprint would add confusion.").

As noted above, the specification defines "XBee form factor" with reference to the *pin arrangement* of the device, not the "footprint" of the device. Appx101 at 4:7-9. Ignoring this intrinsic evidence, NimbeLink argues that "form factor" and "XBee form factor" should be understood using the following vague language:

> A "form factor" is a set of physical characteristics, such as size, shape, and other physical specifications, that define an electronic device. "XBee form factor" refers to a family of wireless connectivity devices that share a few "form factors." Appx740-41 ¶ 9.

Br. at 35. NimbeLink does not identify which "size, shape, and other physical specifications" comprise a "form factor." NimbeLink also does not identify the devices that comprise the "family of wireless connectivity devices that share a few

'form factors.'" *Id.* Notably, NimbeLink's own proposed definition does not mention the *footprint* of an XBee form factor. *Id.*

NimbeLink's citations to alleged "examples" of "XBee form factors" only add confusion, because NimbeLink admits that "XBee form factors" do not have a standard size or shape. Br. at 39 ("There is more than one XBee form factor, and therefore more than one footprint, or size, associated with an XBee form factor."); Appx23 (district court finding that "NimbeLink acknowledges that XBee form factors do not have a standard size or shape"). For example, NimbeLink cites mechanical drawings of Digi's XBee® RF Modem showing devices (non-cellular devices) with a *trapezoidal shape* and *two sets of dimensions*: 27.61 mm x 24.38 mm for the XBee, and 32.94 mm x 24.38 mm for the XBee PRO:



Appx1561. Meanwhile, NimbeLink also cites "Skywire™ mechanical drawings from the '651 Provisional Application," which show a different modem with a *rectangular shape* and *different dimensions*:






Appx741 ¶ 10 (citing Appx648-649 (Dkt. 97-4 at NIM0000388-389)).

Undisputed expert testimony confirms that there is no standard "footprint of an XBee form factor" that a person of ordinary skill in the art would know or could apply. Digi's expert, Dr. Daniel van der Weide, testified during claim construction that devices with an XBee form factor merely share a common *pin arrangement*, not a standard set of dimensions. Appx1946-1947 at 60:21-61:5 ("Q. But for the XBee form factor, one skilled in the art would understand those refer to set sizes that come with the XBee products, correct? . . . A. [T]here is a certain set of pins and pin-outs that one [of skill] could expect to be associated with an XBee device. But I'm not

aware that there's . . . a standardized set of dimensions."); Appx1948 at 101:3-19 (explaining that "the XBee form factor is – is characterized by a particular parallel set of pins and the pin-out," not a consistent size); Appx1949-1950 at 108:23-109:8 (explaining that "the words 'form factor' . . . are not dimensions or standards").

NimbeLink does not disagree. As noted above, NimbeLink now admits that there are no standard dimensions or sizes of an "XBee form factor." Br. at 39; Appx23. In fact, NimbeLink's own expert, Dr. Kenneth Fernald, testified that he did not know the "boundaries" of the term "XBee form factor." Appx2151 at 106:19-21; *see also* Appx2154 at 120:23-121:21 (Dr. Fernald did not know how the term "XBee form factor" would be applied). Dr. Fernald also conceded that he did not know the boundaries of the term "the footprint of an XBee form factor." Appx2152-2153 at 113:8-114:22. Indeed, before this case, he had no understanding of the XBee form factor at all. Appx2149 at 94:14-19. This directly contradicts NimbeLink's assertion that "[p]ersons of skill in the art would be familiar with XBee form factors and would understand that an 'XBee-sized' device, or a device that 'conforms to an XBee form factor,' would have a size consistent with these known dimensions, or footprints of XBee devices." Br. at 38.

NimbeLink argues that it "does not matter" that there is no standard size or shape of "the footprint of an XBee form factor." Br. at 39. It certainly matters, especially when undisputed expert testimony demonstrates that persons of ordinary

skill in the art would be unable to apply NimbeLink's proposed construction. Dr. Fernald testified that, if the Court adopts NimbeLink's proposed construction of "space-efficient," a person of ordinary skill in the art would need to go through the "generic process" of claim construction to understand the meaning of "XBee form factor." Appx2155 at 123:7-125:6. That is, according to NimbeLink's expert, adopting NimbeLink's proposed construction would require the Court to go through a *second round of claim construction* to understand the boundaries of the asserted claims. Appx2155 at 123:7-125:6. This strongly refutes NimbeLink's arguments and supports a finding of indefiniteness. *See Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1354 (Fed. Cir. 2005) ("The inability of the expert to use the parameters he himself identified to determine whether an interface screen is 'aesthetically pleasing' militates against the reasonableness of those parameters as delineating the metes and bounds of the invention.").

* * *

For all of these reasons, the Court should reject NimbeLink's proposed construction of "space-efficient cellular modem device." Instead, the Court should hold that "space-efficient cellular modem device" is an indefinite term of degree, and that the asserted claims are therefore invalid under 35 U.S.C. § 112.

## II. THE DISTRICT COURT CORRECTLY DISMISSED NIMBELINK'S BREACH OF CONTRACT CLAIMS

The district court correctly dismissed NimbeLink's breach of contract claims on multiple grounds, including (1) because NimbeLink's Complaint did not adequately plead facts regarding the nature of the "confidential information" that Digi allegedly used, Appx34-35, and (2) because NimbeLink's Complaint did not adequately plead facts regarding the alleged "use" of NimbeLink's confidential information constituting the alleged breach of the NDAs, Appx35-36. This Court should affirm.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A pleading that offers labels or conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotations and citations omitted). Likewise, a complaint fails if it "tenders naked assertions devoid of further factual enhancement." *Id.* (cleaned up). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550

U.S. at 557). The complaint must contain sufficient factual content to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 663.

Under Minnesota law, the elements of a breach of contract claim are "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Lyon Fin. Servs., Inc. v. Illinois Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014).

### A. The Complaint Failed to Adequately Plead the Nature of the Confidential Information at Issue

When a breach of contract claim is based on the alleged use of confidential information, the complaint must "plead facts that establish the nature of the confidential information" that was allegedly used in violation of the contract. *Sleep No. Corp. v. Young et al.*, 507 F. Supp. 3d 1081, 1091–94 (D. Minn. 2020); *see also Schlief v. Nu-Source*, *Inc.*, Civil No. 10-4477 DWF/SER, 2011 WL 1560672, at *4 (D. Minn. Apr. 25, 2011) ("Nu-Source has failed to plead sufficient facts to state a claim for breach of the Agreement's confidentiality provision. At a minimum, Nu-Source must plead facts identifying the type of Nu-Source confidential information that it alleges was copied.").

NimbeLink's Complaint does not plead the nature of the confidential information allegedly used by Digi. The Complaint alleges that Digi used "financial

and marketing information" regarding NimbeLink's product. (Appx136-137 ¶¶ 26-27, 32-33; Appx34.) That is all. Beyond the broad reference to "financial and marketing information," the Complaint provides no additional information about the alleged confidential information allegedly "used" by Digi.

NimbeLink does not cite a single case where a vague allegation such as "financial and marketing information"—or anything similarly generalized—was found to sufficiently disclose the nature of the confidential information at issue in a breach of contract case. In *Sleep Number*, for example, the plaintiff alleged that the defendant breached a confidentiality agreement by using confidential information described as "testing data, schematics, source code, and other confidential documents" as well as "ideas, specialized know-how, processes, [and] product plans," "methods of collecting data related to sleepers and sleep environments," and information related to "monitoring the biometric information of people in beds." 507 F. Supp. 3d at 1094. Similarly, in *Dorset Indus., Inc. v. Unified Grocers, Inc.*, the plaintiff alleged that the defendant breached a confidentiality agreement by using its confidential information described as "checkout counter programs and its business model, plan-o-grams and designs, methods and procedures . . . including creating and designing the specific Program for United." 893 F. Supp. 2d 395, 410 (E.D.N.Y. 2012). As the district court noted, these detailed allegations are a far cry from NimbeLink's vague references to "marketing and financial information." *See*

Appx429-430 (Transcript at 42:24-43:11 (discussing the *Sleep Number* opinion; "THE COURT: So that's my case. Right? That's my opinion. MR. PADMANABHAN: You are right. THE COURT: The complaint there was different. It was much more detailed.")).

In its brief, NimbeLink paraphrases language from the Complaint in seven bullet points, which NimbeLink characterizes as "categories" of confidential information that are "at issue in this case." Br. at 49. These paraphrased bullet points do not help NimbeLink's argument:

- In the *first bullet point*, NimbeLink alleges that the confidential information "at issue in this case" includes "[t]echnical information regarding NimbeLink's Skywire product." *Id.* That is inaccurate. NimbeLink did not allege that Digi used "technical information" in breach of the NDAs, and NimbeLink identifies no such allegation. While Paragraph 19 of the Complaint includes a vague reference to "technical information" that NimbeLink allegedly provided to Digi, there is no allegation that Digi "used" any such information. Appx135. In any event, a vague reference to "technical information" is clearly insufficient to identify the nature of the alleged confidential information at issue.
- In the *second bullet point*, NimbeLink alleges that the confidential information "at issue in this case" includes "[i]nformation regarding the

process NimbeLink used to certify the cellular modems with cellular service providers such as Verizon and T-Mobile." Br. at 49. This is also inaccurate. NimbeLink has never alleged that Digi "used" information regarding "the process that NimbeLink used to certify the cellular modems with cellular service providers such as Verizon and T-Mobile" in breach of the NDAs, and NimbeLink identifies no such allegation. Indeed, there is no reference to "Verizon" or "T-Mobile" certification processes anywhere in the Complaint. While Paragraph 18 alleges that Digi requested that NimbeLink "educate" Digi regarding "NimbeLink's certification processes," there is no allegation that Digi received such information, nor is there an allegation that information concerning third-party "certification processes" was confidential, nor is there an allegation that such information was "used." Appx135.

- NimbeLink's *five other bullet points* are paraphrased variations on the phrase "financial and marketing information," with no additional information regarding the nature of the confidential information allegedly used by Digi. Br. at 49. For example, instead of using the term "marketing information," the bullet points refer to "information regarding the market," "information regarding NimbeLink's understanding of the market," or "detailed business and market strategy information." Likewise, instead of using the term "financial information," the bullet points refer to "detailed financial

information." Describing "financial information" as "detailed" does not provide information about the nature of the information. Likewise, a vague reference to information regarding "basic business strategies" does not come close to meeting the pleading standard. Also, Paragraph 18 alleges that information regarding "basic business strategies" was requested, not that information regarding "basic business strategies" was provided or was confidential. Appx135.

The Complaint does not allege that Digi received any document or writing marked as "confidential," "proprietary," or words of similar meaning. This is also fatal to Count III because the 2015 NDA defines "Proprietary Information" as information that is either "(a) disclosed in tangible form clearly labeled or identified in writing as 'confidential,' 'proprietary,' or words of similar meaning at the time of disclosure or (b) disclosed in non-tangible form, identified as 'confidential' or 'proprietary' or words of similar meaning at the time of disclosure, and summarized in writing designated as 'confidential,' 'proprietary,' or words of similar meaning and delivered to the other Party within thirty (30) days after disclosure." Appx217. Here, the Complaint does not allege whether the confidential information at issue was provided to Digi in tangible or intangible form, and there is no allegation that information allegedly "used" by Digi was provided or summarized in writing as

"confidential," "proprietary," or words of similar meaning. This additional deficiency independently necessitates dismissal of Count III.

### B. The Complaint Failed to Plausibly Allege Unauthorized "Use" of Confidential Information

The district court also dismissed NimbeLink's contract claims for the independent reason that the Complaint did not plead a plausible breach when the Complaint merely alleged that Digi "used" confidential information to "develop its own cellular modem products and enter the market with those products." Appx35. As the district court correctly emphasized, the NDAs specifically contemplated that Digi could develop and introduce competing cellular modem products. *Id.* The 2015 NDA states that "neither Party will be precluded from independently developing technology or pursuing business opportunities similar to those covered by this Agreement." Appx217. The 2016 NDA states that a breach "shall not" be inferred from Digi's use of the "same or similar practices, techniques, concepts or information as those used by NimbeLink or information disclosed [pursuant to the agreement]," and that "nothing in this agreement will restrict" Digi from engaging in business that competes with NimbeLink's cellular modem business. Appx260. The 2016 NDA also expressly acknowledges that—prior to entering into the NDA—Digi was already "knowledgeable" with respect to information about the cellular modem industry. *Id.* Citing these provisions, the district court held: "As such, the Court cannot reasonably infer that Digi breached the NDAs based solely on its

development of XBee Cellular modem products." Appx35. Tellingly, NimbeLink does not mention these provisions.

Because the plain language of the NDAs precludes an inference of breach from the mere allegation that Digi developed and launched a competing product, a plausible claim for breach of the NDAs would need to be based on something more—that is, *some other factual allegation* from which the Court could infer an unauthorized use of confidential information by Digi.

There is no such factual allegation in the Complaint. NimbeLink's only additional allegations regarding the alleged breach are conclusory allegations that Digi "used" confidential information for "non-permitted uses" when developing and launching Digi's competing product:

> 27. During the term of the 2015 NDA, Digi *used* NimbeLink's Proprietary Information for *non-permitted uses*, including for the purposes of developing its own cellular modem products and entering the market with those products.
>
> . . .
>
> 33. During the term of the 2016 NDA, Digi *used* NimbeLink's confidential information for *non-permitted uses*, including for the purposes of developing its own cellular modem products and entering the market with those products.
>
> . . .
>
> 37.[3] In deciding to develop, manufacture, and sell the Accused Products, and in formulating market strategies for the Accused

3 On appeal, NimbeLink argues for the first time that Paragraph 37 is a "comprehensive allegation regarding Digi's unauthorized use of NimbeLink's confidential information." Br. at 51. As discussed above, it is not. Paragraph 37 is

> Products, Digi *used*, without authorization, the confidential information that NimbeLink had provided to Digi pursuant to the 2015 NDA and the 2016 NDA. These *unauthorized uses* of NimbeLink's confidential information constituted breaches of the 2015 NDA and the 2016 NDA.

Appx137-138 (emphasis added).

These conclusory allegations are not based on well-pled facts. The only information given about the alleged "uses" of confidential information are conclusory statements that (a) the "use" was non-permitted and (b) the "use" was for the purposes of developing and introducing a competing product. It is well-established that conclusory allegations are not sufficient to state a plausible claim for relief. *Celgene Corp. v. Mylan Pharms. Inc.*, 17 F.4th 1111, 1128 (Fed. Cir. 2021) ("[W]e 'disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements.'"). The pleading standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*,

---

limited to the same conclusory allegations regarding unauthorized "use" in Paragraphs 27 and 33, which the district court held to be insufficient. Appx137-138. In any event, this argument was not raised in the district court. *See generally* Appx272-283 (no argument regarding Paragraph 37); Appx413 (directing the Court at oral argument to Paragraphs 24-35); Appx417-421 at 30:17-34:8; Appx424-425 at 37:23-38:21 (directing Court at oral argument to paragraphs 19, 22, and 26-27). This argument is therefore waived. *See, e.g.*, *Robinson v. Bank of Am., N.A.*, 553 F. App'x. 648, 651 n.3 (8th Cir. 2014); *Quinn v. St. Louis Cnty.*, 653 F.3d 745, 752 n.6 (8th Cir. 2011); *Miller v. Pilgrim's Pride Corp.*, 366 F.3d 672, 676 (8th Cir. 2004).

556 U.S. at 678 (internal quotations omitted). NimbeLink's allegations fall far short of the plausibility standard.

NimbeLink's other arguments misread the district court opinion. NimbeLink asserts that the district court "hypothesized that Digi may have independently developed its products." Br. at 52. That is not accurate. The district court did not give weight to any hypothetical defense. In fact, footnote 8 states that the Court did not need to reach the question of whether there is an "obvious alternative explanation," such as independent development by Digi, because it found "the factual allegations lacking regardless." Appx36 at n.4.

Nonetheless, NimbeLink is wrong that an obvious alternative explanation is irrelevant to a motion to dismiss a breach of contract claim under Rule 12(b)(6). To the contrary, the Eighth Circuit has explained that the "obvious alternative explanation" question is related to the core question of plausibility:

> It is in this sort of situation – where there is a concrete, "obvious alternative explanation" for the defendant's conduct – that a plaintiff may be required to plead additional facts tending to rule out that alternative . . .
>
> *[The 'obvious alternative explanation'] requirement is neither a special rule nor a new one. It is simply a corollary of the basic plausibility requirement.* An inference pressed by the plaintiff is not plausible if the facts he points to are precisely the result one would expect from lawful conduct in which the defendant is known to have engaged.

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597-98 (8th Cir. 2009) (citations omitted) (emphasis added). The Supreme Court applied this standard in *Iqbal* and *Twombly*, explaining that the implausibility of the asserted claims was demonstrated by the existence of an "obvious alternative explanation." *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567-68.

In the district court, NimbeLink forcefully argued that the "obvious alternative explanation" question is irrelevant to this motion because it applies only to motions to dismiss unconstitutional discrimination claims and has no bearing on motions to dismiss other types of claims. Appx266, Appx273, Appx279-280. That is incorrect. The relevance of an "obvious alternative explanation" to motions to dismiss under Rule 12(b)(6) has been recognized and discussed in numerous federal cases, including in the context of motions to dismiss breach of contract claims,[4] Securities

[4] *See, e.g., TMT Mgmt. Grp., LLC v. U.S. Bank Nat'l Ass'n*, 2016 WL 730254, at *13 (D. Minn. Jan. 4, 2016), *R. & R. adopted*, 2016 WL740410 (D. Minn. Feb. 24, 2016) (motion to dismiss breach of contract claims) ("Courts should consider whether there are lawful 'obvious alternative explanations' for the alleged conduct, because 'where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (citations omitted); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (motion to dismiss breach of contract claims)).

Act claims,[5] Lanham Act claims,[6] tortious interference claims,[7] and many others.

Here, the present case presents exactly the scenario where a plaintiff must plead facts to rule out an obvious alternative explanation to survive a motion to dismiss—because the language of the NDAs, which are embraced by the Complaint,[8] demonstrates that "there is a concrete, obvious alternative explanation for the defendant's conduct." *Braden*, 588 F.3d at 597. The plain language of the NDAs acknowledges that Digi and NimbeLink were competitors, who both had existing knowledge of the industry. Appx260 ("The Receiving Party recognizes that

---

[5] *See, e.g., In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (noting the "obvious alternative explanation" argument and explaining: "When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible within the meaning of *Iqbal* and *Twombly*") (citations omitted).

[6] *See, e.g., Meredith Lodging LLC v. Vacasa LLC*, 2021 WL 5316986, at *1 (D. Or. Nov. 15, 2021) ("Once the complaint is stripped of conclusory statements, the judge then applies 'judicial experience and common sense' and considers 'obvious alternative explanations' to determine if the complaint states a plausible cause of action.").

[7] *See, e.g., Reed Const. Data Inc. v. McGraw-Hill Companies, Inc.*, 745 F. Supp. 2d 343, 354 (S.D.N.Y. 2010) (noting that "*Twombly* and *Iqbal* held that a claim may be dismissed when a lawful explanation for defendant's conduct is more likely than an unlawful explanation").

[8] Documents embraced by the pleadings are properly considered on a motion to dismiss. *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1067 (8th Cir. 2004).

the Disclosing Party is now engaged in a business which competes with the Receiving Party's business. As such, the Disclosing Party acknowledge [sic] that the Receiving Party and its affiliates are knowledgeable with respect to the industry to which the Information relates . . ."). The NDAs specifically contemplate that Digi could independently develop and sell products in the cellular modem market. Appx217; Appx260. These facts establish an obvious alternative explanation for Digi's development and launch of a competing product: that Digi lawfully used its own "knowledge[] with respect to the industry" to develop and launch its cellular modem product, without unlawful conduct violating the NDAs.

NimbeLink pled no facts tending to rule out this obvious alternative explanation. In this scenario, where the facts embraced by the pleadings support a lawful explanation, NimbeLink cannot ask the Court to infer unlawful conduct by Digi without more factual allegations ruling out the lawful explanation and supporting a reasonable inference of unlawful conduct. *Braden*, 588 F.3d at 597 ("An inference pressed by the plaintiff is not plausible if the facts he points to are precisely the result one would expect from lawful conduct in which the defendant is known to have engaged.").

Confronted with nothing more than conclusory allegations and threadbare recitals of the elements, the district court correctly dismissed NimbeLink's unsupported breach of contract claims. This Court should affirm.

## CONCLUSION

For the reasons set forth herein, Digi respectfully requests that this Court affirm the district court's finding that the Asserted Patents are invalid for indefiniteness under 35 U.S.C. § 112, and therefore affirm the dismissal of NimbeLink's claims for patent infringement (Counts I and II). Digi also respectfully requests that this Court affirm the district court's dismissal of NimbeLink's claims for breach of contract (Counts III and IV).

Dated: December 16, 2024

Respectfully submitted,

FAEGRE DRINKER BIDDLE & REATH LLP

*/s/ Katherine S. Razavi*

Timothy E. Grimsrud
Katherine S. Razavi
Kelly J. Fermoyle
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Telephone: +1 612 766 7000
Facsimile: +1 612 766 1600
*tim.grimsrud@faegredrinker.com*
*kate.razavi@faegredrinker.com*
*kelly.fermoyle@faegredrinker.com*

*Attorneys for Defendant-Appellee Digi International, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 24-2292

**Short Case Caption:** NimbeLink Corp. v. Digi Int'l Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 13,071 words.

☐ the filing has been prepared using a monospaced typeface and includes ___________ lines of text.

☐ the filing contains ___________ pages / ___________ words / ___________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ___________).

Date: 12/16/2024

Signature: /s/ Katherine S. Razavi

Name: Katherine S. Razavi

Save for Filing