**2024-2292**

# United States Court of Appeals for the Federal Circuit

NIMBELINK CORP.,

*Plaintiff-Appellant,*

v.

DIGI INTERNATIONAL INC.,

*Defendant-Appellee.*

*Appeal from the United States District Court for the District of Minnesota, Case No. 0:22-cv-02345-NEB-DJF*

## REPLY BRIEF OF APPELLANT

Devan V. Padmanabhan
Paul J. Robbennolt
Erin O. Dungan
Mariah L. Reynolds
Britta S. Loftus
Padmanabhan & Dawson, PLLC
9800 Shelard Parkway, Suite 120
Minneapolis, MN 55441
(612) 444-3601
devan@paddalawgroup.com
paul@paddalawgroup.com
erin@paddalawgroup.com
mariah@paddalawgroup.com
britta@paddalawgroup.com

January 6, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 24-2292 |
| **Short Case Caption** | NimbeLink Corp. v. Digi International Inc. |
| **Filing Party/Entity** | NimbeLink Corp. |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 01/06/2025

Signature:  /s/Devan V. Padmanabhan

Name:  Devan V. Padmanabhan

| 1. Represented Entities.<br>Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest.<br>Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders.<br>Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| NimbeLink Corp. | | Airgain, Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑    None/Not Applicable          ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐    Yes (file separate notice; see below)    ☑    No    ☐    N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# **TABLE OF CONTENTS**

I.   THE DISTRICT COURT ERRED IN FINDING THAT "SPACE-EFFICIENT CELLULAR MODEM DEVICE" IS INDEFINITE ................1

   A. "Space-Efficient" Refers to the Size of the "Cellular Modem Device" ....................................................................................................1

   B. The Patents-in-Suit Provide Adequate Guidance Regarding the Sizes of Modem Devices That Are "Space-Efficient" ..........................3

   C. "Space-Efficient Cellular Modem Device" Does Not Refer to "the Efficient Spacing of Surface-Mounted Components, Connectors, and Interfaces" ....................................................................................6

   D. If "Space-Efficient Cellular Modem Device" Were Indefinite, It Would Not Be Limiting ..........................................................................8

II.  THE DISTRICT COURT ERRED IN REFUSING TO CONSTRUE "SPACE-EFFICIENT CELLULAR MODEM DEVICE" TO MEAN "A CELLULAR MODEM DEVICE INCORPORATING A MULTI-LAYER PCB AND WITH A FOOTPRINT CONSISTENT WITH THE FOOTPRINT OF AN XBEE FORM FACTOR" ........................................16

   A. The Specification Supports NimbeLink's Proposed Construction ......16

   B. The Prosecution History Does Not Refute NimbeLink's Proposed Construction ....................................................................................17

   C. NimbeLink's Proposed Construction Does Not Lack Objective Boundaries Because There are Three Standard "Footprints of an XBee Form Factor" ..........................................................................18

III. THE DISTRICT COURT ERRED IN DISMISSING NIMBELINK'S BREACH OF CONTRACT CLAIMS FOR FAILURE TO STATE A CLAIM FOR RELIEF ....................................................................................21

   A. NimbeLink's Complaint Adequately Pled the Nature of the Confidential Information ....................................................................21

i

B. NimbeLink's Complaint Adequately Pled Digi's Unauthorized Use of NimbeLink's Confidential Information to Develop and Launch Its Own Competitive Cellular Modem Product ...................................25

## <u>TABLE OF AUTHORITIES</u>

<u>Case</u>                                                                 <u>Page(s)</u>

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
   299 F.3d 1336 (Fed. Cir. 2002) ............................................... 9, 10, 11

*American Med. Systs., Inc. v. Biolitec, Inc.*,
   618 F.3d 1354 (Fed. Cir. 2010) ..................................... 12, 13, 14, 15

*Arctic Cat Inc. v. GEP Power Prods., Inc.*,
   919 F.3d 1320 (Fed. Cir. 2019) ...........................................12

*Dorset Indus., Inc.  v. Unified Grocers, Inc.*,
   893 F.Supp.2d 395 (E.D. N.Y. 2012) ...................................... 22, 24

*Enervations, Inc. v. Minnesota Mining & Mfg. Co.*,
   380 F.3d 1066 (8th Cir. 2004) ...........................................27

*Georgetown Rail Equip. Co. v. Holland L.P.*,
   867 F.3d 1229 (Fed. Cir. 2017) .........................................14

*IMS Tech., Inc. v. Haas Automation, Inc.*,
   206 F.3d 1422 (Fed. Cir. 2000) ........................................12

*JobDiva, Inc. v. Monster Worldwide, Inc.*,
   No. 13-cv-8229 (KBF), 2014 WL 5034674 (S.D. N.Y. Oct. 3, 2014)......... 11, 12

*Liberty Ammunition, Inc. v. United States*,
   835 F.3d 1388 (Fed. Cir. 2016) ........................................5

*Luminati Networks Ltd. v. BIScience Inc.*,
   No. 2:18-cv-00483-JRG, 2019 WL 6683268 (E.D. Tex. Dec. 6, 2019) ...........11

*Nautilus, Inc. v. Biosig Instrs., Inc.*,
   572 U.S. 898 (2014).....................................................10

*Niazi Lic. Corp. v. St. Judge Med. S.C., Inc.*,
   30 F.4th 1339 (Fed. Cir. 2022) ........................................4

*Sleep No. Corp. v. Yount*,
    507 F.Supp.3d 1081 (D. Minn. 2020)....................................................................24

*Unwired Planet L.L.C. v. Google, Inc.*,
    660 Fed. Appx. 974 (Fed. Cir. 2016)....................................................................11

The district court erroneously held that the preamble phrase "space-efficient cellular modem device" was indefinite. Because the specification teaches that the "space-efficient" refers to the size of the device and provides examples of device sizes that are "space-efficient," NimbeLink respectfully requests that this Court reverse the judgment of invalidity, adopt NimbeLink's proposed construction, and remand for further proceedings.

The district court also erroneously dismissed NimbeLink's breach of contract claims for failure to state a claim. Because the Complaint sufficiently alleges the nature of the confidential information at issue and that Digi used that confidential information without authorization in violation of the NDAs, NimbeLink respectfully requests that this Court reverse the district court's judgment of dismissal and remand for further proceedings.

## I.    THE DISTRICT COURT ERRED IN FINDING THAT "SPACE-EFFICIENT CELLULAR MODEM DEVICE" IS INDEFINITE

### A.    <u>"Space-Efficient" Refers to the Size of the "Cellular Modem Device"</u>

The specification provides objective boundaries sufficient to understand the meaning of "space-efficient cellular modem device" and the scope of the claims. Blue Br. at 21-27. Digi attempts to confuse the issue, listing an assortment of components and characteristics that supposedly have "connections" with the phrase

1

"space-efficient." Red Br. at 24-26. But the specification's teachings regarding the meaning of "space-efficient cellular modem device" are simple and direct: "space-efficient" refers to the size, or "footprint," of the cellular modem device.

This teaching is explicit in Column 5, where the patentees refer to the "***space-efficient size*** of [the] embedded cellular modem …." Appx102 at 5:3-4. This passage clearly and unequivocally tells persons of skill in the art that "space-efficient" refers to the "size" of the cellular modem device. The same point is conveyed in the "Background of the Invention" and "Summary of the Invention." There, the patentees explain that prior art embedded cellular modems were undesirable in part because of their "large footprint," or size. Appx100 at 1:28-32. In contrast, they describe the embedded cellular modems of the invention as "space-efficient"; they do not have the "large footprint" required by the prior art devices. Appx100 at 33-38. The patentees reinforce this teaching by referring to "the compact, space-efficient embedded cellular modem." Appx101 at 4:19-20. As the district court recognized, the patentees' use of "compact" clearly "suggest[s] that 'space-efficient' refers to the modem's size." Appx19.

These statements teach that "space-efficient" refers to the size of the "cellular modem device."

**B.**     <u>The Patents-in-Suit Provide Adequate Guidance Regarding the Sizes of Modem Devices That Are "Space-Efficient"</u>

The specification also speaks clearly to the scope of "space-efficient," *i.e.*, the sizes of cellular modem devices that are "space-efficient." Blue Br. at 22-25. Most directly, the specification provides examples of sizes of cellular modem devices claimed in the Patents-in-Suit, and that therefore meet the "space-efficient" term. These examples appear in the drawings, in the written description, and even in the claims themselves.

For example, Figures 5, 8 and 10 disclose dimensions of 29 mm by 33.6 mm. Appx83 and Appx85-86. The specification recites the same dimensions. Appx101 at 4:16-18. The dependent claims provide explicit examples of "space-efficient" cellular modems, claiming modems "wherein the length does not exceed 40 mm and the width does not exceed 35 mm," and modems "wherein the length does not exceed 34 mm and the width does not exceed 29 mm." Appx102 at Claims 6 and 7; Appx103 at Claims 16 and 17; Appx129 at Claims 11 and 18; Appx130 at Claim 27.[1] A person of skill in the art would understand that ***at least***

---

[1] Digi's suggestion that the patentees' recitation of specific dimensions in dependent claims means that "space-efficient" must mean something other than size is specious. Red Br. at 28 (emphasis in original). NimbeLink contends that "space efficient" refers to the footprint, or the size, of the device. Dimensions are just one way to measure the footprint or size of a device.

3

cellular modems of the sizes listed in the specification and dependent claims would satisfy the "space-efficient" term.

There is no basis for Digi's argument that these examples are not "tied to the term 'space-efficient.'" Red Br. at 30-31. The specification makes clear that "space-efficient" refers to the size of the device. Dimensions are indisputably one way to express the size of the device; accordingly, the specification's examples of sizes of devices covered by the claims, expressed in dimensions, are tied directly to the "space-efficient" term. Thus, as explained in the Blue Brief, this Court's decision in *Niazi*, which holds that examples in the specification can provide guidance regarding the scope of the claims, is instructive. *See* Blue Br. at 25-27, *discussing Niazi Lic. Corp. v. St. Judge Med. S.C., Inc.*, 30 F.4th 1339 (Fed. Cir. 2022), and cases cited therein.

The specification provides further guidance regarding the sizes of cellular modem devices that are "space-efficient" by describing the cellular modems of the invention as "XBee-sized." Blue Br. at 34-38. The specification repeatedly refers to the "XBee-sized board" of the invention. Appx102 at 5:3-12; Appx102 at 5:19-21. The patentees also teach that the claimed cellular modems can conform to an "XBee form factor," which includes the standard sizes of XBee form factor devices. Appx100 at 1:36-41; Appx101 at 4:19-28; Appx101 at 5:19-21. Two

4

dependent claims explicitly recite a cellular modem device that "conforms to an XBee form factor." Appx102 at Claim 5; Appx103 at Claim 15.

It is undisputed that, at the time of the priority date for the Patents-in-Suit, there were three standard sizes for XBee form factor devices, *i.e.*, "XBee-sized" devices: 33.6 mm by 29 mm for the NimbeLink Skywire product with "XBee Form Factor"; 32.94 mm by 24.38 mm for XBee Pro products; and 27.61 mm by 24.38 mm for XBee products. Appx741-742 at ¶10; Appx736-378. Thus, a person of skill in the art would understand that cellular modems with these standard XBee sizes would satisfy the "space-efficient" term.

The extensive evidence cited above constitutes more than "a single reference to an embodiment" (Red Br. at 26-27), or "only vague information about the potential meaning of the term 'space-efficient.'" Red Br. at 14. The specification is consistent with *Liberty Ammunition*, upon which Digi relies. Red Br. at 30; *Liberty Ammunition, Inc. v. United States*, 835 F.3d 1388 (Fed. Cir. 2016). The specification clearly and explicitly provides "points of comparison" to assist in determining whether a cellular modem device is "space-efficient." *Liberty Ammunition*, 835 F.3d at 1396-97. First, the specification provides examples of specific sizes of cellular modem devices—identified by specific dimensions—that are covered by the claims, and therefore necessarily satisfy the "space-efficient" term. Second, the specification repeatedly refers to the invention as "XBee-sized,"

referring to well-known prior art products that have a set of standard sizes. These points of comparison provide ample guidance regarding the "objective boundaries" around "space-efficient."

### C.    "Space-Efficient Cellular Modem Device" Does Not Refer to "the Efficient Spacing of Surface-Mounted Components, Connectors, and Interfaces"

Digi cites favorably the district court's erroneous finding that the meaning of "space-efficient" is "muddled" because some passages suggest that the term is linked to the size of the device, while other passages "suggested connections between 'space-efficient' and *the efficient spacing of surface mounted component*[s]." Red Br. at 13 (emphasis in original). This is simply not true. Blue Br. at 27-29. "Efficient spacing" describes a characteristic of the components, which are efficiently spaced **on** the PC board of device. "Space-efficient," on the other hand, is an adjective that describes a characteristic of **the cellular modem itself**. Thus, "efficient spacing" and "space-efficient" are different concepts that modify or apply to different structures. "Space efficient" describes a specific characteristic—the size—of the "cellular modem device."

Digi claims that the column 4 passage referring to the "efficient spacing of surface-mounted components" is relevant to the meaning of "space-efficient" because it "begins with a clear reference to the 'space-efficient embedded cellular modem.'" Red Br. at 25. But that passage, which explains Figure 6 and the

6

"efficient spacing" of components, does not describe the "space-efficient cellular modem device" as a whole. *See* Appx101 at 4:19-33. The first sentence of the passage refers to "the compact, space-efficient embedded cellular modem ***100***." Appx101 at 4:19-20 (emphasis added). But "space-efficient embedded cellular modem 100" does not even appear in Figure 6:



*Fig. 6*

Appx84. Instead, the subject of Figure 6 and the column 4 passage is a ***single component*** of the space-efficient cellular modem device, "PC board 102." *See id.*; Appx100 at 2:66-67 ("Fig. 6 depicts *a multi-layer PC board assembly* of the embedded cellular modem of Fig. 1"). The remainder of the passage exclusively describes an embodiment of the ***PC board***, including the height of the board. Appx101 at 4:21-33.

The passage in column 5 that Digi cites confirms that the components and their spacing do not bear on the meaning of "space-efficient cellular modem

device." *See* Red Br. at 24. That passage teaches that "space-efficient" as it modifies "cellular modem device" refers to the "size" of the device. Appx101 at 5:3-4 ("space-efficient size of embedded cellular modem 100"). It also explains the "link" between the space-efficient nature of the modem and the spacing and arrangement of the components on the board: the arrangement of the components is one factor that "enables" the "space-efficient size of [the] cellular modem." *Id.* at 5:3-6.

Thus "space-efficient cellular modem device" does not refer to the "efficient spacing" of components on the PC board of the modem. The district court erroneously held that "space-efficient cellular modem device" was indefinite. This Court should reverse the judgment of invalidity and remand for further proceedings.

### D.    If "Space-Efficient Cellular Modem Device" Were Indefinite, It Would Not Be Limiting

As explained above, "space-efficient cellular modem device" is not indefinite and this Court should reverse the district court's judgment of invalidity. Alternatively, if this Court agrees with the district court's holding that "space-efficient cellular modem device" is indefinite, the Court should reverse the district court's judgment of invalidity because that indefinite preamble term cannot be a claim limitation. Blue Br. at 30-31.

The district court held that "space-efficient cellular modem device" is limiting because that phrase "was intended to give life, meaning, and vitality to the claims." Appx12. But this Court has explained that indefinite claim terms cannot give "life, meaning, and vitality" to the claims. *See Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1346-1347 (Fed. Cir. 2002). The phrase at issue in *Allen Eng'g*—a "fast steering" motorized riding trowel—was, like "space-efficient," a term of degree. *Id.* at 1347 (" 'fast steering' is a relative term"). This Court held in *Allen Eng'g*, like the district court (erroneously) held in this case, that the patent did not give persons of skill in the art sufficient guidance to determine whether a given device was "fast steering." *Compare id.* at 1347 ("no interpretative frame of reference is provided [and] there is no indication … that one of skill in the relevant art would understand what is meant by ['fast steering'] in this context without such a frame of reference"); to Appx16 (Patents-in-Suit "do not offer a clear method of measuring or determining space efficiency, nor do they offer any discernable objective boundaries by which a person of ordinary skill in the art would understand the scope of the claims"). As this Court explained in *Allen Eng'g*, when the specification does not provide sufficient guidance to interpret a term of degree, that term "fails to give 'life, meaning and vitality' to the claimed structure, and thus is not a limitation of the claim." *Allen Eng'g*, 299 F.3d at 1347. Thus, if the district court in this case ***were correct*** that the specification

9

does not provide adequate guidance to measure or determine whether a cellular modem device is "space-efficient," that term could not give "life, meaning, and vitality" to the claim and would not be limiting. *Id.*

Digi's criticism of *Allen Eng'g* on the grounds that it was "decided under the abrogated 'insolubly ambiguous' standard" misses the mark. Red Br. at 22. This Court's decision in *Allen Eng'g* did not turn on whether that term was "insolubly ambiguous"; that phrase does not appear in the opinion. The basis for this Court's determination that "fast steering" was indefinite—that the specification does not provide guidance on how to determine whether a device is "fast steering"—is not inconsistent with the *Nautilus* standard[2] and mirrors the district court's (erroneous) conclusions in this case. Thus, *Allen Eng'g* is instructive in this case.[3]

---

[2] A claim is indefinite if it "fails to inform those skilled in the art about the scope of the invention with reasonable certainty" when "viewed in light of the specification and prosecution history." *Nautilus, Inc. v. Biosig Instrs., Inc.*, 572 U.S. 898, 910 (2014).

[3] Digi also argues claims that *Allen Eng'g* is inapplicable because the district court correctly "reject[ed] NimbeLink's reading of *Allen*," Red Br. at 22, but this argument, too, falls short. The district court misunderstood NimbeLink's position. NimbeLink argued below, like it argues here, that if "space-efficient" is indefinite it cannot be a claim limitation. The district court inexplicably reversed this argument, asserting that NimbeLink argued "that a term that is limiting cannot also be indefinite ...." Appx12-13. The district court thus did not address NimbeLink's reading of *Allen*. In fact, the district court **confirmed** NimbeLink's reading of *Allen*, stating that this Court in *Allen Eng'g* "determined that the preamble was indefinite before concluding it was not limiting," and explaining in a parenthetical that "fast steering" was not a claim limitation **because** it was determined to be indefinite. Appx13, *citing Allen Eng'g*, 299 F.3d at 1347.

10

Digi's argument that "many courts have found a preamble term to be limiting and indefinite" is also unavailing. Red Br. at 22. None of the four cases cited by Digi—three of which are unreported district court opinions—present the circumstances that were present in *Allen Eng'g* and in this case, in which a preamble term has been held to be a claim limitation because it gives "life, meaning and vitality" to the claims. In *Unwired Planet* and *Luminati*, the preambles were held to be limiting because they provided antecedent basis for a term in the body of the claims. *Unwired Planet L.L.C. v. Google, Inc.*, 660 Fed. Appx. 974, 986 (Fed. Cir. 2016); *Luminati Networks Ltd. v. BIScience Inc.*, No. 2:18-cv-00483-JRG, 2019 WL 6683268, at *8 (E.D. Tex. Dec. 6, 2019). The district court here did not find that "space-efficient" provides antecedent basis and, as explained in more detail below, there is no basis for such a finding. Accordingly, *Unwired Planet* and *Luminati* are inapplicable. In *JobDiva*, the district court held a preamble term to be limiting because the "applicant clearly relied on the preamble language for patentability" of the claims. *JobDiva, Inc. v. Monster Worldwide, Inc.*, No. 13-cv-8229 (KBF), 2014 WL 5034674, at *10-11 (S.D. N.Y. Oct. 3, 2014). Here, the district court did not find that "space-efficient" was limiting because the patentees relied on the term for patentability and, as explained below, Digi concedes that the "examiner did not use the specific term

11

'space-efficient' to distinguish prior art during prosecution of the Accused
Patents." Red Br. at 20. Thus, *JobDiva* is inapplicable.[4]

The district court here based its decision on the fact that the specification of
the Patents-in-Suit described "the present invention" as "space-efficient embedded
cellular modems" and included repeated references to the term "space-efficient
cellular modem" devices, Appx11-12, but this fact alone does not warrant a
conclusion that the preamble phrase is limiting. *Arctic Cat Inc. v. GEP Power
Prods., Inc.*, 919 F.3d 1320, 1329 (Fed. Cir. 2019) ("not every preamble reference
to additional structure is limiting, even when the structure is noted in the
specification—even, indeed, when the structure is 'underscored as important by the
specification'"). Where the preamble phrase does not recite additional structure,
but instead describes the invention as a whole, it is not limiting despite repeated
references in the specification. "[T]he preamble has no separate limiting effect if
… 'the preamble merely gives a descriptive name to the set of limitations in the
body of the claim that completely set forth the invention." *American Med. Systs.,
Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1359 (Fed. Cir. 2010), *quoting IMS Tech., Inc.
v. Haas Automation, Inc.*, 206 F.3d 1422, 1434-35 (Fed. Cir. 2000).

---

[4] The fourth cited opinion, *HIP*, does not explain the basis for the district court's
holding that the preamble was a claim limitation. *HIP, Inc. v. Hormel Foods Corp.*,
No. 18-615-CFC, 2019 WL 2579266, at *2 (D. Del. June 24, 2019).

12

In *American Med. Systs.*, this Court considered whether "photoselective vaporization of tissue" in the preamble of the claims was a limitation. 618 F.3d at 1358-1363. As in this case, the patentees stated that "*the present invention* relates … to *photoselective vaporization*" of tissue. *Id.* at 1360-61. Also as in this case, the patentees used the phrase multiple times in the specification: "the phrase 'photoselective vaporization' appears in the title, in the abstract, and six times in the rest of the written description …." *Id.* at 1360. Nevertheless, this Court held that "photoselective vaporization of tissue" was not limiting. The phrase did not "embody an essential component of the invention," but instead was "simply a descriptive name for the invention that is fully set forth in the bodies of the claims." *Id.* at 1359. The bodies of the claims "described a structurally complete device …." *Id.* at 1359. The phrase "photoselective vaporization" did not provide additional structure, but was "meant to serve as a label for the invention as a whole." *Id.* at 1361.

If, as Digi contends and the district court held, "space-efficient" does not refer to the **size** of the claimed "cellular modem device," then the phrase "space-efficient cellular modem device" does not provide additional structure to the claims and is simply a "label for the invention as a whole." It is undisputed that the bodies of the claims of the Patents-in-Suit describe structurally complete inventions regardless of the preamble. The district court did not find otherwise, nor does Digi

13

contend that the inventions described in the claims are structurally incomplete without the preamble. This strongly supports a finding that "space-efficient cellular modem device," as interpreted by the district court, is not limiting. *See, e.g.*, *American Med. Systs.*, 618 F.3d at 1359; *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1237-38 (Fed. Cir. 2017).

The manner in which the phrase is used confirms that, unless it refers to the size of the device, it is a descriptive name for the invention that is fully described in the bodies of the claims. The abstract refers to a "space-efficient cellular modem device" (label for the invention) "that includes" a list of components that comprise the invention. Appx77 at "Abstract." The "Field of the Invention" labels the invention as "improved, space-efficient embedded cellular modems for machine-to-machine communication." Appx100 at 1:11-14. The "Summary of the Invention" describes embodiments of "various space-efficient, embedded cellular modems" that have a number of specified structural components listed therein. Appx100 at 1:36-2:48. The only references to "space-efficient" that provide more than a label for the invention as a whole are those that demonstrate that "space-efficient" refers to the size of the device. *See, e.g.*, Appx102 at 5:3-5 (referring to the "space-efficient size of embedded cellular modem 100"). If "space-efficient" does not refer to the size of the device, then it is simply a label for the invention as a whole and is not limiting.

"Space-efficient" does not provide antecedent basis. None of the claims cited by Digi refer to "the *space-efficient* cellular modem device" in the body; rather, these dependent claims refer only to "the cellular modem device" or "the modem device" in both their preambles and their bodies. *See* Appx102-103 at claims 5, 6, 15, and 16 ('570 Patent); Appx129-130 at claims 11, 18, and 27 ('066 Patent). In this circumstance, antecedent basis does not mandate that the preamble be limiting. *See American Med. Systs*, 618 F.3d at 1359 (holding that "'photoselective vaporization of tissue' does not provide a necessary antecedent basis for the term 'the tissue' in the bodies of each of the independent claims"). In fact, the patentee's decision to not repeat the modifier "space-efficient" in subsequent references to the cellular modem device undercuts Digi's assertion that the intrinsic evidence demonstrates the "importance of the feature to the claimed invention." Red Br. at 18-19.

It is undisputed that the patentees did not rely on the preamble to overcome prior art, and Digi expressly admits that the "examiner did not use the specific term 'space-efficient' to distinguish prior art during prosecution of the Accused Patents." Red Br. at 20. Thus, the prosecution history of the Patents-in-Suit does not warrant a finding that "space-efficient cellular modem device" is limiting.

15

**II.     THE DISTRICT COURT ERRED IN REFUSING TO CONSTRUE "SPACE-EFFICIENT CELLULAR MODEM DEVICE" TO MEAN "A CELLULAR MODEM DEVICE INCORPORATING A MULTI-LAYER PCB AND WITH A FOOTPRINT CONSISTENT WITH THE FOOTPRINT OF AN XBEE FORM FACTOR"**

As demonstrated above, the district court erred when it held that "space-efficient cellular modem device" is indefinite, thereby invaliding the claims of the Patents-in-Suit. Therefore, this Court should reverse the district court's judgment of invalidity regardless of whether it adopts NimbeLink's proposed construction of the term. In any event, this Court should construe "space-efficient cellular modem device" as proposed by NimbeLink: "a cellular modem device incorporating a multi-layer PCB and with a footprint consistent with the footprint of an XBee form factor."

**A.     The Specification Supports NimbeLink's Proposed Construction**

Digi argues that the specification does not support NimbeLink's proposed construction because it allegedly does not show any "connection between the term 'space-efficient' and the 'footprint of an XBee form factor.'" Red Br. at 33.[5] As

---

[5] Both the district court and Digi point out that the specification does not use the precise phrase "footprint of an XBee form factor." Appx23; Blue Br. at 33. The specification ***does use*** the term "footprint," and uses it in the same manner NimbeLink's proposed construction does, and in a manner consistent with the ordinary meaning of the term: to refer to the size of the device. Blue Br. at 42-43. A cellular modem device "with a footprint consistent with the footprint of an XBee form factor" is a cellular modem device with a size that is consistent with the known sizes of XBee form factor devices. This is amply supported by the

16

explained above, however, the specification describes a direct connection between "space-efficient" and the size, or "footprint," of the cellular modem device. *See supra*, pp. 1-2. Moreover, the specification ties the size of the device directly to the size, or footprint, of XBee form factor[6] devices. *Supra*, pp. 4-5. Thus, NimbeLink's proposed construction is fully supported by the specification.

## B.    The Prosecution History Does Not Refute NimbeLink's Proposed Construction

Digi argues that the prosecution history "refutes NimbeLink's proposed construction" because NimbeLink "intentionally removed" the phrase "packaged in an XBee form factor" from the independent claims. Red Br. at 39-40; Appx26. NimbeLink addressed the district court's analysis and Digi's argument in the Blue Brief, pointing out that the argument is based on a false equation between "a *footprint* of an XBee form factor" and "the XBee form factor." Blue Br. at 43-44. As NimbeLink pointed out, it does not seek to add "packaged in an XBee form

---

specification, which describes the claimed cellular modem devices as "XBee-sized." *See supra*, pp. 4-5.

[6] Digi contends that "XBee form factor" refers only to the "pin arrangement," but that is demonstrably untrue. The specification refers to "XBee-sized" devices, indicating that devices with an "XBee form factor" have commonly-known sizes. *See supra*, pp. 5. NimbeLink's expert confirmed this, explaining that "XBee form factor" refers to a family of devices that share a number of characteristics, including, in addition to pin arrangement, a common set of sizes of the devices. Appx740-742 at ¶¶ 9-10; Appx733-738. Digi has never disputed that those sizes the established sizes of XBee form factor devices.

factor" to its construction or to the claims, nor does its proposed construction

address any of the features and characteristics of an "XBee form factor" **other**

**than** the "footprint," or size, of XBee form factor devices. *Id.* Digi ignored

NimbeLink's analysis and made no effort to explain how "a footprint of an XBee

form factor" is equivalent to "the XBee form factor." Red Br. at 39-40.

C.    **NimbeLink's Proposed Construction Does Not Lack Objective
      Boundaries Because There are Three Standard "Footprints of an
      XBee Form Factor"**

Digi urges this Court to reject NimbeLink's proposed construction on the

grounds that it "lacks objective boundaries," arguing that "there are no standard …

sizes of an 'XBee form factor.'" Red Br. at 40-43. Digi's argument, however, is

contrary to the evidence and rife with misleading and incorrect statements.

Because there are three standard "footprints of XBee form factors," NimbeLink's

proposed construction provides sufficient guidance to permit the finder of fact to

determine infringement and validity of the claims.

The heart of Digi's argument is its assertion that there are no standard sizes,

or footprints, of "an XBee form factor," so the finder of fact could not apply

NimbeLink's proposed construction. Digi goes so far as to aver unequivocally that

"NimbeLink now admits that there are no standard dimensions or sizes of an

'XBee form factor.'" Red Br. at 43, *citing* Blue Br. at 39. This is patently false.

The cited passage of NimbeLink's Blue Brief does not "admit[] that there are no

18

standard … sizes of an 'XBee form factor,'" it says the precise opposite: "The evidence, including Digi's own documents, demonstrates that the XBee form factors **do have standard sizes**." Blue Br. at 39 (emphasis added).

Digi's misleading statements do not end there. Digi repeatedly states that it is undisputed that "'XBee form factors do not have **a** standard size …." *See*, *e.g.*, Red Br. at 41 (emphasis added). But NimbeLink has never contended that there was or is a **single** standard size, or footprint, of an XBee form factor. From the beginning, NimbeLink has stated—and cited undisputed evidence to establish— that there are **multiple (three)** XBee form factors, and that each XBee form factor has its own standard "footprint" or size. *See* Appx740-42 at ¶¶ 9-10 (declaration of Dr. Fernald filed with NimbeLink's opening claim construction brief, referring to "the footprints of various XBee form factors" and citing evidence providing the standard sizes of the three XBee form factors). More importantly, Digi has never disputed that the evidence cited by Dr. Fernald shows **three standard sizes** of XBee form factors.

Digi also misuses Dr. Fernald's testimony. Digi asserts that Dr. Fernald "did not know the boundaries of the term 'XBee form factor'" and that the district court would have to endure a "second round of claim construction" to understand the meaning of that term in NimbeLink's proposed construction. Red Br. at 43. But the precise boundaries of the term "XBee form factor" are not relevant to NimbeLink's

proposed construction of "space-efficient cellular modem device," which recites only one specific characteristic, a "*footprint*," of an XBee form factor." This term is well understood and does not require further construction; Dr. Fernald explained in detail the scope of "a footprint of an XBee form factor." *Supra*, pp. 5; Appx741-473 at ¶ 10; Appx736-738. The district court even listed these standard sizes for XBee form factor devices in its claim construction order. Appx23 at n.12.

Similarly, Digi's claim that Dr. Fernald "did not know the boundaries of the term 'footprint of an XBee form factor'" is misleading. Red Br. at 43, *citing* Appx2152-2153 at 113:8-114:22. Dr. Fernald listed the footprints of the XBee form factors in existence at time of the priority date of the Patents-in-Suit, and testified that the term "a footprint of an XBee form factor" included those footprints. Appx2152 at 113:14-24.

NimbeLink's proposed construction of "space-efficient cellular modem device" is supported by the specification and consistent with the ordinary meaning of the term. Blue Br. at 41-44. Therefore, the Court should adopt that construction and remand this case for further proceedings.

## III. THE DISTRICT COURT ERRED IN DISMISSING NIMBELINK'S BREACH OF CONTRACT CLAIMS FOR FAILURE TO STATE A CLAIM FOR RELIEF

### A. NimbeLink's Complaint Adequately Pled the Nature of the Confidential Information

The district court dismissed NimbeLink's breach of contract claims in part because it incorrectly held that NimbeLink's Complaint did not adequately plead the nature of the confidential information. Appx34-35. In fact, NimbeLink's Complaint provided sufficient information regarding the nature of the confidential information that it provided to Digi and that Digi used without authorization to plead a claim for breach of the 2015 and 2016 NDAs. Blue Br. at 47-50.

Digi first attempts to argue that "all" of the Complaint's allegations regarding the nature of the confidential information at issue was a "broad reference to 'financial and marketing information.'" Red Br. at 46-47. That argument, though, is untenable. The Complaint identified several categories of confidential information, including "technical information regarding" the Skywire product; information regarding "NimbeLink's certification process"; information regarding the "market for the Skywire product"; information regarding "market opportunities"; and information regarding "detailed business and market strategy" in addition to "detailed financial and marketing information." Blue Br. at 48-49.

Perhaps recognizing that the weakness of its argument, Digi proceeds to address separately a few of the categories of confidential information that

21

NimbeLink identified. Red Br. at 48-50. Digi's arguments, however, do not establish that the allegations are insufficient to state a claim.

For example, with respect to NimbeLink's first bullet point, "technical information regarding NimbeLink's Skywire product," Digi asserts that a "vague reference to 'technical information' is clearly insufficient to identify the nature of the alleged confidential information …." Red Br. at 48. But it is undisputed that NimbeLink's Complaint need not disclose the actual confidential information to state a claim, Blue Br. at 47-48, and the identification of "technical information regarding the Skywire product" is sufficient to identify the category of confidential information at issue. Digi's argument ignores the case law cited by Digi itself. In *Dorset*, the district court held that the complaint sufficiently alleged the nature of confidential information where the plaintiff identified "checkout counter programs and its business model, plan-o-grams and designs, methods and procedures … including creating and designing the specific Program for Unified." *Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F.Supp.2d 395, 411 (E.D. N.Y. 2012). The most detailed component of that list, "checkout counter programs," is no more detailed than "technical information regarding NimbeLink's Skywire product." The remainder of the list provides no detail whatsoever: "its business model, plan-o-grams and designs, methods and procedures."

Digi also argues that the Complaint does not allege that Digi used the confidential technical information regarding the Skywire product, but that is incorrect. The Complaint alleges that this technical information was "confidential to NimbeLink," and that NimbeLink provided it to Digi "pursuant to the 2015 NDA." Appx135 at ¶ 19. The Complaint subsequently alleges that Digi "used, without authorization," all of the "confidential information that NimbeLink had provided to Digi pursuant to the 2015 NDA and the 2016 NDA," which necessarily includes the confidential technical information regarding the Skywire product. Appx 138 at ¶ 37. This alone is sufficient to plead a claim for breach of the 2015 NDA.

Similarly, the information identified in NimbeLink's second bullet point, "regarding the process NimbeLink used to certify its cellular modems," was among the confidential information that NimbeLink provided to Digi pursuant to the 2015 NDA. Appx135 at ¶¶ 18-19. As explained above, the Complaint alleges that Digi "used" that information because it alleges that Digi used, without authorization, all of the confidential information NimbeLink provided to Digi pursuant to the 2015 and 2016 NDAs. Appx138 at ¶ 37.

Digi addresses the remaining five categories of information collectively, arguing that the descriptions are not detailed enough to state a claim. Red Br. at 49-50. That argument is incorrect; under the case law cited by Digi, the Complaint's

allegations are sufficient to describe the categories of confidential information at issue. Blue Br. at 48-50. For example, the Complaint alleges that NimbeLink provided to Digi pursuant to the 2015 NDA "detailed business and market strategy information" regarding the Skywire product. Appx135 at ¶ 19. This description compares favorably to the allegation in *Dorset* that the confidential information included a "business model." *Dorset*, 893 F.Supp.2d at 411. It also compares favorably with the allegations that were held sufficient in *Sleep Number*, which included the identification of "ideas, specialized know-how, processes, [and] product plans." *Sleep No. Corp. v. Yount*, 507 F.Supp.3d 1081, 1094 (D. Minn. 2020). Similarly, NimbeLink's description of categories of confidential information as that regarding "the market" and "market opportunities" for the Skywire product are sufficient to describe the categories of confidential information at issue and to state a claim. Appx135 at ¶¶ 18-19; Appx136 at ¶ 22. Additionally, the Complaint alleges that NimbeLink disclosed to Digi pursuant to the 2016 NDA "detailed financial information about the Skywire product." Appx136 at ¶ 22. This description is sufficient to identify the nature of the confidential information; identifying the specific financial information, *e.g.*, sales, revenue, cost, and profit information, does not provide any meaningful additional information.

Finally, Digi's argument that the Complaint fails to state a claim for breach of the 2015 NDA because it does not allege that the confidential information at issue "was provided or summarized in writing as 'confidential,' proprietary,' or words of similar meaning" is unavailing. Red Br. at 50-51. The Complaint alleges that NimbeLink provided the confidential information at issue to Digi "pursuant to the 2015 NDA." That allegation subsumes within it allegations that any requirements of the 2015 NDA were met, including the "writing" requirement cited by Digi.

**B.      NimbeLink's Complaint Adequately Pled Digi's Unauthorized Use of NimbeLink's Confidential Information to Develop and Launch Its Own Competitive Cellular Modem Product**

Digi argues that NimbeLink's breach of contract allegations are insufficient because provisions in the NDAs permit Digi to develop and introduce a competing cellular modem product and bar inferences of breach based on such activity. In its zeal to justify the district court's erroneous dismissal of NimbeLink's breach of contract claims, however, Digi mischaracterizes the evidence. Digi asserts that "the NDAs clearly state that, prior to any alleged transfer of 'information' under the NDAs, Digi was already 'engaged in a business which competes with [NimbeLink's] business' and was already 'knowledgeable with respect to the industry to which the Information relates'…" Red Br. at 9. Although that language

appears in the *2016 NDA*, it does not appear in any form in the 2015 NDA.[7]

*Compare* Appx260 to Appx217-218. Nothing in the NDAs states that Digi was

competing with NimbeLink and was "knowledgeable with respect to the

[embedded cellular modem] industry" prior to receiving NimbeLink's confidential

information **pursuant to the 2015 NDA**. That is an important distinction, as will

be demonstrated below.

Based on the cited provisions of the NDAs, Digi argues that NimbeLink's

allegations that Digi used NimbeLink's confidential information are insufficient to

state a claim. Digi argues that "a plausible claim for breach of the NDAs would

need to be based on something more" than "the mere allegation that Digi

developed and launched a competing product," Red Br. at 52, and NimbeLink must

"plead facts to rule out an obvious alternative explanation … for Digi's

development and launch of a competing product: that Digi lawfully used its own

'knowledge[] with respect to the industry' to develop and launch its cellular

modem product, without unlawful conduct violating the NDAs." Red Br. at 56-57.

A review of NimbeLink's Complaint shows that it pleads factual allegations

that tend to rule out Digi's purported "obvious alternative explanation" and give

---

[7] Nor does the 2015 NDA prohibit an inference of breach from Digi's development
or introduction of a competing product. Appx217-218.

rise to a reasonable inference that Digi unlawfully used NimbeLink's confidential

information in developing and introducing its competitive products to the market.

There is no evidence or allegation that Digi had "knowledge[] with respect

to the industry" prior to the execution of the 2016 NDA in November 2016.

Appx136 at ¶ 22. There is, however, evidence that the court can consider on a

motion to dismiss that tends to show that Digi was ***not*** knowledgeable about the

embedded cellular modem industry when the parties executed the 2015 NDA in

June 2015. Appx135 at ¶ 17. Specifically, the 2015 NDA, which was attached to

NimbeLink's Complaint,[8] **does not recite** that Digi is "knowledgeable with respect

to the industry." Appx217-218. The 2015 NDA is a Digi document with the Digi

logo and Digi's name and address pre-printed. *Id.* Digi clearly knew how to

include in an NDA a provision acknowledging that it was "knowledgeable with

respect to the industry," and could have included that language in the 2015 NDA.

Digi chose not to include such language in the 2015 NDA. It is reasonable to infer,

therefore, that Digi was not knowledgeable with respect to the embedded cellular

modem industry as of June 2015.

NimbeLink's Complaint recites factual allegations that support this

inference that Digi was not knowledgeable about the embedded cellular modem

---

[8] Documents embraced by the pleadings are properly considered on a motion to dismiss. *Enervations, Inc. v. Minnesota Mining & Mfg. Co.*, 380 F.3d 1066, 1067 (8th Cir. 2004).

industry before receiving NimbeLink's confidential information pursuant to the

2015 NDA. The Complaint alleges that "Digi approached NimbeLink" in 2015 to

request NimbeLink's assistance with the Skywire™ product. Appx135 at ¶ 16. The

Complaint further alleges that, during the parties' subsequent discussions and

communications, Digi requested that NimbeLink "educate Digi regarding the

Skywire™ product, NimbeLink's certification process, the market for the

Skywire™ product, and NimbeLink's understanding of the market opportunities

and basic business strategies." Appx135 at ¶ 18. These allegations tend to rule out

Digi's purported "obvious alternative explanation." If Digi were knowledgeable in

2015 about the embedded cellular modem industry, and capable of developing,

launching, and marketing its own product without the assistance of NimbeLink and

NimbeLink's confidential information, Digi would not have requested confidential

information from NimbeLink. It is therefore reasonable to infer that Digi requested

NimbeLink's confidential information because it was ***not knowledgeable*** about the

product or the industry. It is also reasonable to infer that Digi **became**

knowledgeable about the product and the industry by December 2016 because

NimbeLink educated Digi regarding those matters by providing Digi with

NimbeLink's confidential information pursuant to the 2015 NDA. These factual

allegations therefore tend to rule out Digi's alternative theory that it developed and

introduced its competitive product on its own, without using NimbeLink's confidential information.

The Complaint recites still more factual allegations that tend to rule out Digi's purported "obvious alternative explanation." The Complaint alleges that Digi had "skepticism regarding the viability of the Skywire™ product," and that NimbeLink met with Digi and provided Digi with its confidential information in part to address that skepticism and facilitate Digi's potential acquisition of NimbeLink. Appx135 at ¶¶ 18-19. The Complaint alleges that, during meetings between the parties in December 2015, NimbeLink disclosed to Digi NimbeLink's confidential information regarding the Skywire™ product and NimbeLink's business strategy and marketing strategy that "underlies the market success of the Skywire™ product" in order to overcome Digi's skepticism. Appx135 at ¶ 19.

These factual allegations also tend to rule out Digi's purported "obvious alternative explanation." If Digi were "knowledgeable about the embedded cellular modem industry" before receiving NimbeLink's confidential information, and if it were both capable of and interested in "us[ing] its own 'knowledge[] …' to develop and launch its cellular modem product, without unlawful conduct violating the NDAs," Red Br. at 57, Digi would not have expressed skepticism regarding the viability of NimbeLink's embedded cellular modem product, and would not have

29

required NimbeLink's confidential information in order to be convinced of the viability of the product.

It is reasonable to infer, based on these factual allegations, that before Digi received NimbeLink's confidential information, Digi was skeptical about the market viability of embedded cellular modem products, as the Complaint alleges. It is reasonable to infer further that, through its review of NimbeLink's confidential information about the Skywire™ product and the business strategies and marketing strategies that underlie its success, Digi became convinced of the market viability of an embedded cellular modem product and determined to introduce its own knock-off competitive product. It is also reasonable to infer that Digi then used NimbeLink's confidential information without authorization in "deciding to develop, manufacture, and sell the Accused Products, and in formulating its market strategies for the Accused Products," precisely as the Complaint alleges. Appx138 at ¶ 37.[9]

---

[9] Digi contends that NimbeLink somehow waived its right to cite paragraph 37 in support of its appeal, Red Br. at 52-53 n.3, even though NimbeLink made the same argument here that it made below: that the Complaint sufficiently alleges that Digi used NimbeLink's confidential information without authorization. Digi's waiver argument makes no sense. The district court considered and focused on paragraph 37 in deciding Digi's motion to dismiss, and NimbeLink is within its right to address that paragraph on appeal. *See*, *e.g.* Appx32 (district court opinion on motion to dismiss acknowledging that paragraph 37 of the Complaint "alleges that Digi used, without authorization, the confidential information that NimbeLink had provided to Digi under the NDAs 'to develop, manufacture, and sell' the XBee Cellular modem products, and in formulating its market strategies for them");

All of these factual allegations, and the reasonable inferences to which they give rise, tend to rule out Digi's purported "obvious alternative explanation" that it developed its competitive embedded cellular modem products on its own without using NimbeLink's confidential information in violation of the NDAs. The Complaint therefore states a claim for breach of the NDAs.

Respectfully submitted,

/s/Devan V. Padmanabhan
Devan V. Padmanabhan
Paul J. Robbennolt
Erin O. Dungan
Mariah L. Reynolds
Britta S. Loftus
PADMANABHAN & DAWSON PLLC
9800 Shelard Parkway, Suite 120
Minneapolis, MN 55441
(612) 444-3601
devan@paddalawgroup.com
paul@paddalawgroup.com
erin@paddalawgroup.com
mariah@paddalawgroup.com
britta@paddalawgroup.com

*Counsel for Plaintiff-Appellant*

---

Appx393 at lines 6-11 (transcript of hearing on motion to dismiss; "THE COURT: … [A]m I right that the complaint focuses on the breach of the NDAs in paragraphs 24 to 37? I'm not sure if there are additional paragraphs that the court needs to focus on. MS. RAZAVI: I think that's right, Your Honor.").

31

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2024-2292

**Short Case Caption:** NimbeLink Corp. v. Digi International Inc.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes _6,986_ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: _01/06/2025_    Signature: _/s/Devan V. Padmanabhan_

Name: _Devan V. Padmanabhan_