NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**NIMBELINK CORP.,**
*Plaintiff-Appellant*

**v.**

**DIGI INTERNATIONAL INC.,**
*Defendant-Appellee*

---

2024-2292

---

Appeal from the United States District Court for the District of Minnesota in No. 0:22-cv-02345-NEB-DJF, Judge Nancy E. Brasel.

---

Decided: February 23, 2026

---

DEVAN V. PADMANABHAN, Padmanabhan & Dawson PLLC, Minneapolis, MN, argued for plaintiff-appellant. Also represented by ERIN DUNGAN, BRITTA LOFTUS, MARIAH L. REYNOLDS, PAUL J. ROBBENNOLT.

KATHERINE S. RAZAVI, Faegre Drinker Biddle & Reath LLP, Minneapolis, MN, argued for defendant-appellee. Also represented by KELLY J. FERMOYLE, TIMOTHY E. GRIMSRUD; ANDREW M. MCCOY, Indianapolis, IN.

---

Before MOORE, *Chief Judge*, DYK and TARANTO, *Circuit Judges*.

MOORE, *Chief Judge*.

NimbeLink Corp. (NimbeLink) appeals an invalidity judgment from the United States District Court for the District of Minnesota and the dismissal of NimbeLink's breach-of-contract claims. For the following reasons, we reverse the judgment of invalidity and affirm the dismissal of NimbeLink's breach-of-contract claims.

BACKGROUND

NimbeLink owns U.S. Patent Nos. 9,497,570 and 9,838,066 (collectively, the Asserted Patents), which relate to embedded cellular modems. '570 patent at 1:11–14.[1] The disclosed modems facilitate machine-to-machine communication in remote environments via cellular networks. '570 patent at 1:18–23, 35–43. Claim 1 of the '570 patent is representative:

> 1. A *space-efficient cellular modem device* for machine-to-machine communications, the modem device comprising:
>
> > a multi-layer printed circuit board defining a top side and a bottom side and including a first circuit layer adjacent the top side, a second circuit layer adjacent the bottom side, a ground plane layer, and a power plane layer, the ground and power plane

---

[1] Because the parties agree the Asserted Patents' specifications are nearly identical, we cite to the specification of the '570 patent alone. NimbeLink Br. 3 n.1; Digi Br. 7 n.1.

layers located between the first and second circuit layers;

a cellular transceiver module configured to communicate over a cellular wireless cellular network, the cellular transceiver module comprising a processor and attached to a top side of the multi-layer printed circuit board;

electrical power-management components attached to the multi-layer printed circuit board, the power-management components in electrical communication with the cellular transceiver module;

a first plurality of electrically-conductive pins in electrical connection with the cellular transceiver module and aligned along a first pin axis to form a first row of pins, each of the first plurality of pins extending outwardly and away from the bottom side of the multi-layer printed circuit board;

a second plurality of electrically-conductive pins in electrical connection with the cellular transceiver module and aligned along a second pin axis to form a second row of pins, each of the second plurality of pins extending outwardly and away from the bottom side of the multi-layer printed circuit board, the second row of pins located opposite the first row of pins; and

a communications port in electrical communication with the cellular transceiver module, the communications port configured to receive and transmit communication signals over the cellular wireless network.

*Id.* at 6:6–41 (emphasis added).

In 2022, NimbeLink sued Digi International Inc. (Digi) for allegedly infringing at least claim 1 of each of the Asserted Patents with its accused XBee cellular modem products and breaching non-disclosure agreements (NDAs) executed in 2015 (2015 NDA) and 2016 (2016 NDA). NimbeLink's patent infringement claims proceeded to claim construction, where the parties disputed whether the preamble phrase appearing in every asserted independent claim—"space-efficient cellular modem device"—is limiting, and if so, whether the term "space-efficient" is indefinite. *See* J.A. 9–27. The district court determined the preamble was limiting because it recites additional structure the specification underscores as important to the invention. J.A. 10–12. The court then held the term "space-efficient" indefinite because the term failed to convey discernable, objective boundaries to a skilled artisan. J.A. 14–22. Following the court's determination, the parties stipulated to judgment that all asserted claims of the Asserted Patents are invalid as indefinite under 35 U.S.C. § 112(b) and that Digi therefore does not infringe any valid claim of the Asserted Patents. *See* J.A. 3–4. The court accordingly entered judgment to that effect. *Id.*

NimbeLink's breach-of-contract claims arise from an independent set of factual allegations, which we accept as true for the purposes of this appeal. In 2015, while the application for the '570 patent was pending, Digi sought NimbeLink's help to develop a product that would incorporate the Skywire[2] product. J.A. 135 ¶ 16. NimbeLink and Digi then entered into the 2015 NDA, under which they would exchange information about product design. J.A. 135 ¶ 17; J.A. 217–18. During the 2015 NDA's term, Digi expressed

2 Skywire is NimbeLink's line of cellular embedded modems designed to provide plug-in cellular connectivity. J.A. 133 ¶¶ 9–10.

interest in acquiring NimbeLink and asked to be educated on the Skywire product, NimbeLink's cellular certification process, and the Skywire product's market potential. J.A. 135 ¶ 18. In December 2015, Nimbelink and Digi representatives met twice to discuss the Skywire product, and during those meetings, Nimbelink disclosed financial and marketing information related to the Skywire product. J.A. 135–36 ¶¶ 19, 26. Discussions continued through January 2016, when Digi informed Nimbelink that Digi was no longer interested in an acquisition. *Id.* ¶¶ 19–20. Later that year, however, Digi developed a renewed interest in acquiring NimbeLink, prompting the parties to enter into the 2016 NDA, under which Digi would receive marketing and financial information from NimbeLink. J.A. 136 ¶ 22; J.A. 137 ¶¶ 31–32. Digi ultimately chose not to acquire NimbeLink; instead, in January 2017, Digi introduced its own cellular modem products, including the XBee Cellular modem product line. J.A. 136 ¶ 23; J.A. 138 ¶ 36. NimbeLink subsequently brought breach-of-contract claims alleging Digi violated the 2015 and 2016 NDAs. J.A. 137 ¶¶ 28, 34. Digi moved to dismiss. *See* J.A. 29. The district court granted Digi's motion, concluding the complaint failed to plausibly allege (1) the specific nature of the confidential information allegedly disclosed under the NDAs and (2) Digi's unauthorized use. J.A. 33–36.

NimbeLink appeals the invalidity judgment and the dismissal of its breach-of-contract claims. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

NimbeLink argues we should: (1) reverse the district court's holding that the preamble phrase "space-efficient cellular modem device" is indefinite; and (2) reverse the district court's dismissal of NimbeLink's breach-of-contract claims because the complaint adequately alleges the nature of the confidential information disclosed under the

NDAs, as well as Digi's unauthorized use of that confidential information.

## I. Preamble Construction

Whether preamble language is a claim limitation is a question of law. *Data Engine Techs. LLC v. Google LLC*, 10 F.4th 1375, 1380 (Fed. Cir. 2021). We review a district court's claim construction based on intrinsic evidence de novo and its subsidiary fact findings about extrinsic evidence for clear error. *Forest Lab'ys, LLC v. Sigmapharm Lab'ys, LLC*, 918 F.3d 928, 932–33 (Fed. Cir. 2019). Normally, a preamble is used to state a purpose or intended use for the invention and therefore is generally not limiting. *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1292 (Fed. Cir. 2015). We have articulated a number of guideposts to aid in determining whether the preamble is limiting. For example, a preamble may be limiting if it recites additional structure or steps the specification underscores as important, provides antecedent basis for a claim limitation, or serves as a basis for distinguishing prior art during prosecution. *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002).

Digi argues the Asserted Patents' written description, claim language, and prosecution history confirm the preamble phrase "space-efficient cellular modem device" is limiting. Digi Br. 17–21. The written description supports that conclusion, in Digi's view, for three reasons. First, the written description identifies "space-efficient embedded cellular modems" as the "present invention." '570 patent at 1:12–14. Second, the written description refers to the invention and embodiments as "space-efficient" cellular modem devices, emphasizing the important role space efficiency plays in the claimed invention. *See id.* at Abstract (disclosing "[a] space-efficient cellular modem device"), 1:36–37 (disclosing that "[e]mbodiments of the invention comprise various space-efficient, embedded cellular modems"). Third, the written description refers to the

structure, arrangement, or size of the cellular modem device as "space-efficient." *See, e.g.*, *id.* at 4:19–21 ("compact, space-efficient embedded cellular modem"), 4:32 ("efficient spacing of surface-mounted components"), 5:3–4 ("[t]he space-efficient size of [the] embedded cellular modem"). Digi argues the claims further suggest the preamble phrase is limiting because the phrase provides antecedent basis for multiple dependent claims reciting "the modem device" or "the cellular modem device." *Compare id.* at claims 5–6, 15–16, *with* claims 1, 10. And finally, Digi argues the prosecution history shows the preamble phrase is limiting because the examiner distinguished the prior art based on the claimed cellular modem device's "arrangement, relative size and overall complete structure," each of which the specification describes as "space-efficient." J.A. 927 (notice of allowance); *see* '570 patent at 4:19–21, 4:31–33, 5:3–6. While NimbeLink argues that "space-efficient" is limiting (if the claims are not indefinite), NimbeLink Br. 30–31, at the same time, NimbeLink argues "space-efficient" does not recite essential structure, does not provide antecedent basis for any terms in the bodies of the claims, and did not serve as a basis for distinguishing prior art during prosecution. *Id.* We conclude that the term "space-efficient" in the preamble is not a limitation.[3]

---

[3] In determining whether the preamble phrase is limiting, neither the parties' constructions nor that of the district court bind us on de novo review. *See DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1299 (Fed. Cir. 2006) ("This court reviews claim construction without deference."); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1274 (Fed. Cir. 2012) ("Just as a district court may construe the claims in a way that neither party advocates, . . . we may depart from the district court and adopt a new construction on appeal[.]") (internal citations omitted).

Even accepting Digi's premise that the written description identifies a "space-efficient cellular modem" as the "present invention," the preamble phrase does not recite additional, essential structure beyond what is already otherwise claimed. As the written description explains, a skilled artisan may achieve space savings through various design choices, including the use of a stacked or multi-layer circuit board configuration, '570 patent at 5:15–18; various pin arrangements, *id.* at 4:7–13; the XBee form factor, *id.* at 4:19–21; surface mount connectors, *id.* at 4:31–33; and a micro-SIM card slot, *id.* at 5:9–11. Every such space-saving feature appears in the body of the various claims. *See, e.g., id.* at 6:8–14 (reciting a multi-layer printed circuit board), 7:17–24 (reciting two rows of outwardly extending, electrically conductive pins), 8:10–11 (reciting a cellular modem device conforming to an XBee form factor), 6:15–19 (reciting a cellular transceiver module attached to a top side of—i.e., mounted on the surface of—the multi-layer printed circuit board), 6:62–63 (reciting a micro-SIM card slot). In other words, the claims themselves, by virtue of their recited elements, already embody a degree of space efficiency without relying on the preamble to add another structural limitation. We conclude that the preamble describes a characteristic or result of the claimed design choices, but it does not supply an additional structural requirement necessary to define the invention. We have long held that preamble language that merely extolls the benefits or features of the claimed invention does not limit claim scope. *Catalina*, 289 F.3d at 809. We conclude that the term "space-efficient" in the preamble does exactly this—extoll the virtues of the structurally complete invention contained within the body of the claim.

While Digi is correct that portions of the preamble provide antecedent basis for claim limitations contained within the body of the claim, the dependent claims of the '570 patent refer back to "the cellular modem device." '570 patent at claims 5–6, 15–16. A preamble that is

limiting in part does not transform nearby descriptive words in the preamble into claim limitations. *TomTom, Inc. v. Adolph*, 790 F.3d 1315, 1323 (Fed. Cir. 2015) ("[t]hat [part of] the phrase in the preamble . . . provides a necessary structure for [independent] claim 1 does not necessarily convert the entire preamble into a limitation"). That is particularly true when, as here, the bodies of the dependent claims recite a structurally complete device "such that deletion of ['space-efficient'] does not affect the structure . . . of the claimed invention." *Id.* at 1324 (quoting *Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1358–59 (Fed. Cir. 2010)) (internal quotations omitted). We conclude that the bodies of the claims at issue define a complete and operative invention and that the preamble language is not, in this case, an additional claim limitation beyond what is already contained in the body of the claim.

The prosecution history does not compel a different conclusion. In the reasons for allowance, the examiner noted "[w]hen taken as a whole, in combination, none of the prior art discloses" the claimed cellular modem's "specific circuit structure including the arrangement, relative size and overall complete structure." J.A. 927. This examiner reference does not demonstrate reliance on the term "space-efficient" in the preamble as a limitation. *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1236 (Fed. Cir. 2017) (quoting *Catalina*, 289 F.3d at 808) (holding that a term in the preamble was not limiting where there was no clear reliance on it to distinguish the claimed invention from the prior art).

We see no basis to deviate from the general rule that preamble language is not limiting. The claims at issue describe a complete and operative invention. The preamble does not introduce essential structure but rather extolls the virtues of the claimed invention. Therefore, we reverse the judgement of invalidity.

## II. Breach-of-Contract Claims

We review the grant of a motion to dismiss according to the law of the regional circuit, here the Eighth Circuit. *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1259 (Fed. Cir. 2018) (citing *Cleveland Clinic Found. v. True Health Diags. LLC*, 859 F.3d 1352, 1359 (Fed. Cir. 2017)). The Eighth Circuit reviews the grant of a motion to dismiss de novo. *Affordable Comtys. of Mo. v. Federal Nat'l Mortg. Ass'n*, 714 F.3d 1069, 1073 (8th Cir. 2013). In doing so, the Eighth Circuit "accept[s] all facts pled by the nonmoving party as true and draw[s] all reasonable inferences from the facts in favor of the nonmovant." *Waldron v. Boeing Co.*, 388 F.3d. 591, 593 (8th Cir. 2004).

NimbeLink argues the district court erred in two respects by dismissing the breach-of-contract claims. NimbeLink Br. 46–53. First, as to confidential information, NimbeLink argues it is not required to disclose the information itself; instead, it need only describe the *nature* of that information, which NimbeLink maintains it did with sufficient detail. *See, e.g.*, J.A. 135 ¶ 18 (alleging Digi sought information regarding the Skywire product and NimbeLink's cellular certification process); *id.* at ¶ 19 (alleging NimbeLink provided Digi "technical information" regarding the Skywire product and "detailed business and market strategy information that underlies the success of the Skywire[] product" under the 2015 NDA); J.A. 136 ¶ 22 (alleging NimbeLink provided Digi "financial and market information . . ., including detailed financial information about the Skywire[] product and information about the market for that product" under the 2016 NDA). Second, as to unauthorized use, NimbeLink argues it plausibly alleged that Digi used NimbeLink's confidential information in breach of the NDAs to launch a competing cellular modem. *See, e.g.*, J.A. 137 ¶ 27 (alleging "[d]uring the term of the 2015 NDA, Digi used NimbeLink's Proprietary Information for non-permitted uses," including to develop and enter the market with its own cellular modem products);

*id.* at ¶ 28 (alleging "Digi's non-permitted uses of NimbeLink's Proprietary Information constitute a breach of the 2015 NDA"); *id.* at ¶¶ 33–34 (alleging the same regarding the 2016 NDA). Taken together, NimbeLink contends these allegations suffice to state a breach-of-contract claim. We do not agree.

NimbeLink's complaint fails to sufficiently plead the nature of the alleged confidential information at issue. NimbeLink characterizes that information as relating to "financ[e] and marketing," but that is too vague to pass muster under Rule 8. *See Sip-Top, Inc. v. Ekco Grp., Inc.*, 86 F.3d 827, 831 (8th Cir. 1996) (when a breach-of-contract claim is based on the alleged use of confidential information, the plaintiff must demonstrate the information allegedly used in violation of the contract "was the type of information covered by the Confidentiality Agreement"). NimbeLink's description of the alleged confidential information as "technical" or related to "business and marketing strategy" does not meaningfully distinguish between confidential and non-confidential information to survive the motion to dismiss. J.A. 135 ¶ 19. While NimbeLink alleges with more particularity that it provided Digi information about the Skywire product and cellular certification processes, it fails to allege that information was confidential. *Id.* at ¶ 18. NimbeLink correctly notes Rule 8 does not require disclosure of the confidential information itself, but the rule does require sufficient factual content to allow the court to draw the reasonable inference that Digi is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Like the district court, we conclude that NimbeLink's complaint fails to meet this requirement.

The complaint also fails to plausibly allege unauthorized use of confidential information. NimbeLink's theory of breach rests primarily on Digi's later introduction of competing modem products after the NDA-governed discussions concluded. But the 2015 NDA expressly permits independent development. J.A. 217 ("[N]either Party will

be precluded from independently developing technology or pursuing business opportunities similar to those covered by this Agreement."). And the 2016 NDA prohibits an inference of breach from the mere fact of later competition. J.A. 260 (establishing Digi's use of "practices, techniques, concepts or information as those used by [NimbeLink]" does not "give rise to any inference that any Information was used or disclosed in violation of this agreement"). Under these circumstances, NimbeLink's allegations do not support a reasonable inference that Digi used NimbeLink's confidential financial information rather than its own knowledge, experience, or any information exchanged between the parties that Digi was permitted to use. We cannot say the district court erred in dismissing the breach-of-contract claims under these circumstances.

## CONCLUSION

We have considered Digi's remaining arguments and find them unpersuasive. We reverse the judgment of invalidity. We affirm the dismissal of NimbeLink's breach-of-contract claims.

**AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED**

## COSTS

No costs.